Frank W. KOGER, Appellant,

v.

HARTFORD LIFE INSURANCE COMPANY, Respondent.

No. WD 57544.

Missouri Court of Appeals, Western District.

Aug. 29, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 2000.

Dale K. Irwin, Kansas City, Robert Plotkin, Chicago, IL, for Appellant.

Andrew H. McCue, Kansas City, Barry A. Chashoff, San Antonio, for Respondent.

Before: LOWENSTEIN, P.J., LAURA DENVIR STITH and NEWTON, J.J.

HAROLD L. LOWENSTEIN, Judge.

## FACTS

In 1983, Appellant Frank W. Koger ("Koger") purchased and was issued a flexible premium adjustable life insurance policy by Fidelity Bankers Life Insurance Company ("Fidelity"). The policy provided a death benefit of $500,000.00 and a maturity date of June 15, 2025. The policy was designed to work as follows: The policyholder had the right to determine the size of the monthly premium to be paid on the policy, with certain limitations. At the very least, the policyholder had to pay enough to cover the "cost of insurance," an amount determined by Fidelity, which was supposed to be the actual monthly cost of the insurance provided by the policy. Fidelity had the right to periodically adjust the cost of insurance, which became progressively higher as the insured became older. Fidelity placed any amounts paid in excess of the cost of insurance in a "cash value account" on which Fidelity paid a rate of interest that fluctuated with the market. The policy would terminate if the premium paid plus the policy's cash value was insufficient to cover the monthly cost of insurance.

In 1991, Fidelity was placed in receivership. In March 1992, Defendant–Respondent Hartford Life Insurance Company ("Hartford") signed an agreement with the Fidelity receiver under which Hartford would assume the policies of Fidelity policyholders who so elected. Koger and thousands of other policyholders elected to have Hartford assume their policies. The policy, after assumption by Hartford, contained essentially the same provisions as the original policy issued by Fidelity.

On February 3, 1994, Hartford sent to Koger a letter (the "Premium Increase Letter") which stated in pertinent part as follows:

Now that your policy has been transferred to Hartford Life we have had the opportunity to review your current situation. We have found that, due to the interest rate decline and the impact of the conservation proceedings at the Fidelity Bankers Life, your policy, like many others, now has a cash value that may not be sufficient to maintain insurance protection for its full term. In order to enhance your universal life policy's cash value, Hartford Life suggests you increase your premium to $900.00 beginning in April. This change will be made unless you notify us by April 1. Of course, you may continue at any premium level you choose. However, your new suggested premium will improve your policy's cash value and help ensure that your future cash values and insurance match your policy's original objectives.

More than 16,000 policyholders received a letter substantially similar to that just detailed. Nearly 13,000 of those policyholders elected to be billed an increased premium.

In a letter dated February 23, 1994, Koger replied to Hartford and requested that Hartford "not raise my premium until I specifically direct that it be done." As the result of an administrative mistake, Hartford did not follow Koger's instructions and began debiting his checking ac-

count an additional $150.00, raising the deduction from $750.00 to $900.00, in March 1994.[1] In some sixteen months, Hartford erroneously debited a total of $2,400.00 from Koger's checking account.

On March 7, 1995, Koger filed his original petition in this action. After Hartford's motion for a more definite statement was granted, Koger filed a first amended petition on January 27, 1996. Koger alleged Hartford employed "an unlawful scheme to cause thousands of its policyholders to pay increased premiums based on, among other things, misleading solicitations." Koger brought the action "on behalf of himself and all other persons who purchased Flexible Premium Adjustable Life Insurance policies from Fidelity Bankers Insurance Company and who... elected to have Hartford assume those polices." Koger asserted the following claims: breach of fiduciary duty, fraud, breach of duty of good faith and fair dealing, negligent misrepresentation, rescission and declaratory relief and a request for an accounting. Additionally, on February 9, 1996, Koger filed a motion for class certification relating to the above claims.

On February 20, 1996, Hartford filed a motion to dismiss Koger's amended petition for failure to state a claim upon which relief could be granted. On August 12, 1996, Koger filed a motion requesting the appointment of a special master to oversee the case, which motion was granted on October 4, 1996. In December 1996, the trial judge granted Hartford's motion to dismiss Koger's amended petition as to all counts excluding the count for breach of good faith and fair dealing.

On January 31, 1997, Hartford filed a motion for summary judgment as to Koger's claim for breach of good faith and fair dealing, the only remaining claim asserted in the first amended petition. Hartford asserted Koger could not prove Hartford acted in bad faith with respect to

one of the express obligations set forth in the written contract, and therefore had no claim for breach of good faith and fair dealing. On February 18, 1997, Hartford filed a second motion for summary judgment as to Koger's claim for breach of good faith and fair dealing, this time asserting Koger could not prove damages even if he could prove liability at trial. Hartford asserted, and it is uncontested, that on February 17, 1997, a check was tendered to Koger in the amount of $2,706.13, the amount of the erroneous debits from Koger's checking account plus interest, an amount which satisfied all of Koger's pleaded actual damages.

On March 13, 1997, the Special Master assigned by the trial judge held hearing on Koger's motion for class certification and Hartford's first and second motions for summary judgment. The Special Master issued a report which included recommendations to the trial court for resolution of those issues on December 18, 1998. The Special Master advised as follows:

(1) Hartford's first motion for summary judgment should be overruled.

(2) Hartford's second motion for summary judgment should be sustained.

(3) Koger's motion for class certification should be overruled.

Koger filed objections to the report of the Special Master on January 20, 1999. Additionally, Koger offered to the court two affidavits, the first an affidavit given by Koger himself and the second by Alan Nadolna, a financial planner. Each of the affidavits propounded upon the deceptiveness of the Premium Increase Letter. Hartford filed objection as to each of the affidavits.

Koger motioned for leave to file a second amended petition on February 11, 1999. The second petition added as "supplemental allegations concerning the unlawful acts against plaintiff," Hartford's

---

1. Koger paid his Hartford premiums by automatic debit from his checking account. It is unclear from the pleadings and the stipula-

tions how Hartford was able to effectuate this extra deduction from Koger's account.

conduct regarding the unauthorized withdrawals from Koger's checking account. The second petition also contained "additional individual claims" of conversion/theft, breach of fiduciary duty, prima facie tort and breach of contract.

On June 23, 1999, the trial judge issued its order and judgment which fully disposed of all claims and motions relating to this case. The court ordered as follows:

(1) Koger's objections to the report of the Special Master were overruled.

(2) The court adopted the findings of fact made by the Special Master.

(3) Hartford's objections to the affidavits of Alan Nadolna and Frank Koger were sustained.

(4) Hartford's first and second motions for summary judgment were sustained.

(5) Koger's motion for class certification was overruled.

On appeal, Koger asserts the trial court erred by:

(1) Granting Hartford's second motion for summary judgment based on inability to prove damages because Koger asserted a claim for both compensatory and punitive damages and only the claim for compensatory damages had been extinguished;

(2) Denying Koger leave to file his second amended petition because amendment should be liberally granted and there would be no prejudice to Hartford;

(3) Dismissing Koger's claim for breach of fiduciary duty because Hartford's investments on Koger's behalf made it a fiduciary;

(4) Granting Hartford's first motion for summary judgment because there was a factual issue as to whether the premium increase letter was misleading;

(5) Dismissing Koger's fraud claim because the petition stated a valid claim for fraud;

(6) Denying Koger's motion for class certification because Koger met all the necessary prerequisites; namely, Koger was representative of the proposed class.

The court will analyze Koger's appeal points as follows: (1) The issue of Koger's motion for class certification is analyzed in Section I, infra. Additionally, Koger's claims asserted in his first amended petition are taken up in the sub-sections within Section I.(2) Koger's motion for leave to file a second amended petition is analyzed in Section II, infra. The claims asserted in his proposed second amended petition are analyzed in the sub-sections which follow.

## STANDARD OF REVIEW

The majority of the points raised in this appeal emanate from the grant of summary judgment or from the grant of a motion to dismiss. Appellate review of denial of a motion for leave to amend is set out in Section II. Review of summary judgment is under Rule 74.04. The evidence in the record will be reviewed in the light most favorable to Koger, the party against whom judgment was entered, and accord him the benefit of all reasonable inferences from the record. Review is essentially de novo. The burden is on the movant, Hartford, to show the right to judgment flowing from facts on which there is no genuine dispute. *ITT Commercial Finance Corporation v. Mid-America Marine Supply Corporation,* 854 S.W.2d 371, 376–78. A defending party who moves for summary judgment may prove it is entitled to summary judgment by showing the non-movant will be unable to produce to the court sufficient evidence to allow the jury to find any of the essential elements of the non-movant's case. *Bailey v. Innovative Management, Inc.,* 916 S.W.2d 805, 807 (Mo.App.1995).

■ Appellate review of the grant of a motion to dismiss is also de novo, but is based on an examination of the pleadings to determine whether the plaintiff's peti-

tion invokes principles of substantive law. The pleadings are liberally construed and all alleged facts are accepted as true and construed in a light most favorable to the pleader. *Behrenhausen v. All About Travel, Inc.,* 967 S.W.2d 213, 216 (Mo.App. 1998).

## ANALYSIS

### I. CLASS ACTION CERTIFICATION

Koger asserts that the trial court erred in denying his motion for class certification, which Koger filed shortly after filing his first amended petition. He sought certification on behalf of himself and:

All other persons who purchased Flexible Premium Adjustable Life Insurance policies from Fidelity Bankers Insurance Company and who elected to have Hartford Life Insurance companies assume those policies.

The trial court, on the suggestion of the Special Master, denied the motion for class certification.

This court reviews class certification rulings for an abuse of discretion. *Senn v. Manchester Bank of St. Louis,* 583 S.W.2d 119, 132 (Mo. banc 1979). A court abuses its discretion only if its "ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. 'It cannot be said that the trial court abused its discretion where reasonable persons could differ with the propriety of its ruling.'" *Duckett v. Troester,* 996 S.W.2d 641, 646 (Mo.App. 1999) quoting *McGraw v. Andes,* 978 S.W.2d 794, 801 (Mo.App.1998).

A class action is a nontraditional litigation procedure in which the judgments will bind individuals who did not initiate the litigation, who have little or no practical control over its conduct or outcome, and who will never have their own day in court over the questions considered in the action. See *Beatty v. Metropolitan St. Louis Sewer Dist.,* 914 S.W.2d 791 (Mo. banc 1995). Supreme Court Rule 52.08 governs procedure involved in class action

certification. In order for this case to be certified as a class action, all the requirements of Rule 52.08 must be met. See *State ex rel. Niess v. Junkins,* 572 S.W.2d 468, 470 (Mo.1978). Dispositive in this case, Koger failed to meet the requirement of 52.08(a)(3).

Rule 52.08(a)(3) requires the claims of the representative party to be typical of the claims of the class. A class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Harris v. Union Elec. Co.,* 766 S.W.2d 80, 86 (Mo. banc 1989) quoting *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). This is obviously not so in this case. Koger's only claim for injury against Hartford arises out of Hartford's unauthorized withdrawal of additional premiums from Koger's checking account. Koger is attempting to represent a class of people who were allegedly injured by deceptiveness surrounding the Premium Increase Letter. Koger cannot assert injury on that basis as he fully admits he was not deceived by the letter and was therefore not injured by such. Consequently, Koger's claim for injury is not typical of the class he proposes to represent, and the requirement of Rule 52.08(a)(3) cannot be met.

Further, one who cannot assert a claim individually cannot personally assert the same claim on behalf of the class. *Harris,* 766 S.W.2d at 86. As is set out more fully in the sub-points which follow, Koger cannot personally assert any of the claims he asserted under the class action portion of his petition. Because he cannot himself assert a claim typical of the class he wishes to represent, Koger is not the proper party to represent this proposed class.

This point is denied. Following is this court's analysis regarding each of the claims asserted as a basis for class action

certification upon which Koger has appealed.

## A. Fiduciary Duty

Koger alleges the trial court erred in dismissing his claim for breach of fiduciary duty. Koger acknowledges that generally no fiduciary relationship exists between an insurer and the insured in the context of a pure life insurance policy. He claims, however, that a fiduciary relationship exists in this case, "because of the investment component of the policy." Koger asserts that Hartford breached this fiduciary duty, and therefore, Koger's claim on that basis should not have been dismissed.

■ In order to adequately plead a claim for breach of fiduciary relationship, the plaintiff must plead (1) the existence of a fiduciary relationship between the parties, (2) a breach of that fiduciary duty, (3) causation and (4) harm. *Preferred Physicians Mutual Management Group v. Preferred Physicians Mutual Risk Retention,* 918 S.W.2d 805, 811 (Mo.App.1996).

■ Under Missouri law, no fiduciary duty generally exists between insurer and insured. See *A.G. Edwards & Sons, Inc. v. Drew,* 978 S.W.2d 386, 394 (Mo.App. 1998). It is Koger's contention that because his life insurance policy contained an investment aspect, Hartford and Koger and the other policyholders were parties to a fiduciary relationship. Koger's petition states, "Hartford controls the policyholders' cash value accounts, decides what investments to make, and determines what earnings should be credited to and what costs should be deducted from those accounts, and therefore has a fiduciary and/or confidential relationship with plaintiff and the other Class members." This court will not determine whether a fiduciary relationship was created by the investment component of the Hartford life insurance policies as such a finding is unnecessary to resolution of this point.

■ Koger's petition was clearly insufficient to plead the elements of breach, cau-

sation and harm. Koger merely asserts that Hartford stood in the position of a fiduciary due to the investment component of the insurance policies. This court cannot determine what Koger is asserting as a breach of any fiduciary duty. The pleadings are void on this point. Additionally, after failing to properly plead breach of duty, Koger could not and did not plead causation. Finally, Koger made no connection between a supposed fiduciary duty arising out of Hartford's investment powers and any harm Koger has suffered. Koger did not properly assert a claim for breach of fiduciary duty. The petition was insufficient, and the trial court did not err in dismissing that claim. This point is denied.

## B. Fraud

■ Koger claims the trial court erred in dismissing his fraud claim because the first amended petition stated a valid claim for fraud in that (1) the Premium Increase Letter was part of a deceptive scheme and (2) Koger was injured by that scheme. Koger's claim for fraud was dismissed for failure to state a claim on which relief could be granted. Appellate review is limited to an examination of the pleadings for determination of whether principles of substantive law have been invoked. The pleadings are liberally construed and all facts alleged are taken as true and are construed in a light most favorable to the plaintiff. *Behrenhausen,* 967 S.W.2d at 216.

The elements of a submissible case of fraud are: (1) a false material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the statement; (5) the hearer's reliance on its truth, and the right to rely thereon; and (6) proximate injury. *Mobley v. Copeland,* 828 S.W.2d 717, 724 (Mo.App.1992). Koger's claim falls short of adequately pleading a claim

for fraud on at least three bases. More specifically, Koger did not adequately plead ignorance of falsity, reliance or injury.

Koger's claim of fraud was based on Hartford's action surrounding the Premium Increase Letter. Koger claimed the Letter contained false material representations, made by Hartford, including misleading information intended to persuade policyholders to pay additional premiums. However, as is shown by Koger's reply letter to Hartford and his demand that Hartford not raise his premiums, Koger was not ignorant of the alleged falsity of Hartford's assertions. In fact, Koger immediately responded to Hartford that he believed the Premium Increase Letter to be "bordering on a scam." Additionally, Koger obviously did not rely on Hartford's allegedly false representations as Koger directed Hartford not to increase his premium payments. Finally, Koger did not adequately plead injury relating to the Premium Increase Letter and its allegedly false representations. Koger's "injury" was brought about by Hartford's error in taking more money from his checking account than had been authorized, not by Koger's reliance on Hartford's "misrepresentations." Koger did not rely on any misrepresentation made by Hartford, therefore, he was not injured by such. Consequently, due to Koger's failure to adequately plead the elements of knowledge of falsity, reliance and injury, the trial court did not err in dismissing Koger's claim for fraud. This point is denied.

## C. Good Faith and Fair Dealing

### 1.

■ Koger appeals the grant of summary judgment on his count for Hartford's breach of the duty of good faith and fair dealing. This count, in his first amended petition, sought damages for himself and the proposed class of policy holders based on Hartford's letter to encourage an increase in the amount of premium payments.

■ Missouri law implies a covenant of good faith and fair dealing in every contract. *Martin v. Prier Brass Manufacturing Co.*, 710 S.W.2d 466, 473 (Mo. App.1986). This court in *Martin* held an actual breach of this implied covenant occurred when a party, in bad faith, utilized contract language that allowed unilateral action to improperly deny the other party from expected benefits flowing from the contract. The plaintiff bears the burden of providing substantial evidence to show bad faith on the part of a defendant. *Morton v. Hearst Corporation*, 779 S.W.2d 268, 273 (Mo.App.1989). The implied duty of one party to cooperate with the other party to a contract to enable performance and achievement of the expected benefits is an enforceable contract right. *McKnight v. Midwest Eye Institute of Kansas City, Inc.*, 799 S.W.2d 909, 914–15 (Mo.App. 1990); *Slone v. Purina Mills, Inc.*, 927 S.W.2d 358, 368 (Mo.App.1996); *Union Electric Company v. Consolidated Coal Company*, 188 F.3d 998, 1001 (8th Cir. 1999). This implied duty to deal in good faith was adopted in Missouri in the *Martin* case, supra, and is taken from the RESTATEMENT (Second) OF CONTRACTS Section 205 (1981) which states that every contract imposes this duty to prevent one party from using express contract terms in such a way as to evade the spirit of the transaction or to deny a party an expected contract benefit. *Wulfing v. Kansas City Southern Industries, Inc.*, 842 S.W.2d 133, 157 (Mo.App.1992); *Home Shopping Club, Inc., v. Roberts Broadcasting Co.*, 989 S.W.2d 174, 179 (Mo.App. 1998).

■ Much of the rationale dealing with denial of class certification under Rule 52.08 applies to deciding this count. Koger never agreed to amending the contract in response to the Hartford letter. He therefore was not a typical claimant for any harm that may have resulted from the Hartford letter. Also, he suffered no damages resulting from any breach which may have arisen out of his having received the

letter. Breach of the implied duty of good faith and fair dealing is a contract action. In order to succeed on a breach of contract, a plaintiff must show the making of a valid enforceable contract between the plaintiff and defendant, the right of the plaintiff and obligation of the defendant under the contract, a violation by the defendant, and damages resulting to the plaintiff from the breach. *Gilomen v. Southwest Mo. Truck Center,* 737 S.W.2d 499, 500–01 (Mo.App.1987).

Koger is unable to show by substantial evidence how Hartford breached this implied duty to himself or to the others he wants to represent. Just as no implied provision can be inserted into a contract which is intentionally silent on a matter to supply a contract obligation, *Acetylene Gas Company v. Oliver,* 939 S.W.2d 404, 410 (Mo.App.1996), the appellant cannot create a suit for a breach of implied duty of good faith and fair dealing for himself or others on these facts. The letter offer, not acted upon but quickly rebuffed by Koger, does not support this claim.

Even if the analysis here is incorrect, the fact remains that any damage suffered by Koger in this count was repaid, with interest. Koger has suffered no damage as he has been made whole.

The trial court was correct in granting summary judgment.

### 2.

Koger further claims the good faith and fair dealing count should stand because of the relationship between himself and his insurer, who stood in the shoes of a fiduciary. The discussion of any breach of a fiduciary duty is discussed in point IA above. As is true regarding that claim, Koger here fails to make any connection between a supposed fiduciary duty arising out of Hartford's investment powers and any harm Koger has suffered. Once again, Koger did not suffer any damage as a result of the Premium Increase Letter. Accordingly, this point is properly denied.

### 3.

Contained in this point is the contention that proffered affidavits of Koger and Alan Nodolna should not have been stricken. These affidavits analyzed the Hartford letter in detail and gave opinions as to the fraudulent and deceptive nature of Hartford's attempt to extract more premium dollars from policyholders. Because of this court's rulings on the prior points, this argument is rendered moot, and will be denied.

## II. AMENDMENT OF THE PETITION

Koger asserts error by the trial court for denying him leave to file his second amended petition. The second amended petition contained claims nearly identical to those asserted in his first amended petition, plus "additional individual claims" of breach of fiduciary duty, prima facie tort, breach of contract and conversion/theft.

 "A trial court has broad discretion in permitting amendment to pleadings, but only clearly erroneous decisions can be reversed." *Wheelehan v. Dueker,* 996 S.W.2d 780, 782 (Mo.App.1999) citing *Lester v. Sayles,* 850 S.W.2d 858 (Mo. banc 1993). "Rule 55.33(a) directs courts to freely grant parties leave to amend when justice so requires." *Id.* However, this court will not reverse a decision denying leave to amend if the amended claims have no merit. *Bratt v. Cohn,* 969 S.W.2d 277, 284 (Mo.App.1998).

The most frequent reason for denying leave to amend is that the opposing party will be prejudiced. Factors the court should consider in making its decision whether to allow an amendment are: hardship to the moving party if leave to amend is denied, the reasons for the moving party's failure to include the new matter in the earlier pleading and the injustice resulting to the party opposing the motion should it be granted. Other considerations are the timeliness of the application, the record of the case as to

plaintiff's prior attempts to state a claim for relief, and whether the plaintiff by amendment could cure the inadequacy of its petition upon which relief could be granted.

*Western Cas. and Sur. Co. v. Kansas City Bank and Trust Co.,* 743 S.W.2d 578, 582 (Mo.App.1988) (citations omitted). Hartford has at no time set forth or demonstrated any prejudice it would encounter if Koger was allowed to file his second amended petition including the additional claims.

Following is this court's analysis regarding each of the claims set forth in Koger's second amended petition as relate to Koger's motion for leave to amend his original petition.

### A. Claims originally asserted in the First Amended Petition

Koger's second amended petition asserts, nearly verbatim, the six "class action allegations" contained in Koger's first amended petition: fraud, breach of fiduciary duty, breach of the duty of good faith and fair dealing, negligent misrepresentation, recission and request for an accounting. As is detailed above, the trial court did not err in dismissing Koger's claims for fraud and breach of fiduciary duty for failure to state a claim upon which relief could be granted. Additionally, the trial court properly granted summary judgment in favor of Hartford as to Koger's claim for breach of the duty of good faith and fair dealing. As these claims are re-asserted nearly verbatim in Koger's second amended petition, Koger failed to cure the inadequacy of his pleading in the first amended petition. Additionally, the three claims of negligent misrepresentation, recission and request for an accounting which were asserted in the first amended petition are also alleged verbatim in the second amended petition. These three claims were dismissed by the trial court for failure to state a claim upon which relief could be granted. Once again, by simply transplanting these inadequate pleadings from the first petition to the second, Koger failed to cure the insufficiency of his original pleading. The denial of Koger's motion for leave to amend was properly granted with respect to each of these claims.

### B. Additional claims asserted in the Second Amended Petition

In addition to the claims originally asserted in the first amended petition and then re-asserted in the second amended petition, Koger added the "additional individual claims" of breach of fiduciary duty, prima facie tort, breach of contract and conversion/theft. Following is this court's analysis regarding Koger's motion for leave to amend his petition as to each of these counts.

#### 1. Breach of Fiduciary Duty

Koger asserted in his second amended petition that Hartford "owed fiduciary duties to plaintiff because Hartford was authorized to directly draw funds from plaintiff's bank account" and that "Hartford's unauthorized seizure of the $2400 from plaintiff's bank account... constitutes intentional and malicious breaches of Hartford's said fiduciary duties that has damaged plaintiff."

As discussed supra, under Missouri law, no fiduciary duty generally exists between insurer and insured. See *A.G. Edwards & Sons, Inc. v. Drew,* 978 S.W.2d at 394. In his class action count asserting breach of fiduciary duty, Koger asserted that because his life insurance policy contained an investment aspect, Hartford and Koger and the other policyholders were parties to a fiduciary relationship. In this proposed count, Koger asserts Hartford stood in the position of a fiduciary because "Hartford was authorized to directly draw funds from plaintiff's bank account." Koger offers no support as to how this creates a fiduciary duty. Again, generally no fiduciary duty exists between insurer and insured. *Id.* at 394.

Koger failed to adequately plead a new claim for breach of fiduciary duty. Therefore, it cannot be said that the trial court clearly erred in denying Koger leave to amend his pleading on this point.

### 2. Prima Facie Tort

■ Koger pled a claim for prima facie tort in his second amended petition. Koger asserted, "Hartford's unauthorized seizure of the $2400 was intentional, was done with an intent to injure plaintiff, caused injury to plaintiff and was without any justification."

■ The elements of a claim for prima facie tort are: (1) an intentional lawful act by defendant; (2) an intent to cause injury to plaintiff; (3) injury to the plaintiff; and (4) an absence of any justification or an insufficient justification for the defendant's act. *Saidawi v. Giovanni's Little Place, Inc.*, 987 S.W.2d 501, 505 (Mo.App.1999). Koger failed to properly plead the first element, that of an intentional *lawful* act by defendant. Here, Koger stated facts tending to prove that Hartford committed an *unlawful* act by withdrawing additional money from Koger's checking account without authorization. *Id.* In fact, Koger's entire claim for relief rests on his assertion that Hartford was unauthorized to, and illegally did, withdraw the additional premiums. Koger failed to adequately plead a claim for prima facie tort by failing to assert an intentional lawful act committed by Hartford. The trial court did not err in denying him leave to amend based on this claim.

### 3. Breach of Contract

■ Koger further asserted in his second amended petition that Hartford's actions in withdrawing additional funds from his checking account constituted breach of contract. As is noted in sub-section C1 above, Koger cannot assert a claim for breach of contract as he cannot show damages resulting from any breach. The money wrongly withdrawn has been repaid to Koger with interest. Koger has been made whole and therefore has no basis upon which to assert a claim for breach of contract. The trial court did not err in denying Koger leave to amend as to this point.

### 4. Conversion

■ Finally, Koger pled in his second amended petition that Hartford's continual withdraw of an extra $150.00 from his bank account for several months with no authorization constituted conversion.

Conversion is the 'unauthorized assumption of the rights of ownership over the personal property of another to the exclusion of the owner's rights.' A general debt will not give rise to a cause of action in conversion. Generally, an action for conversion lies only for a specific chattel which has been wrongfully converted, thus a claim for money may not be asserted in conversion.

*Haas v. Town and Country Mortg.*, 886 S.W.2d 225, 227 (Mo.App.1994) quoting *Rehbein v. St. Louis Southwestern Ry. Co.*, 740 S.W.2d 181, 182–183 (Mo.App. 1987). "While the usual rule is that conversion is not the proper remedy to recover an ordinary debt, 'money is the appropriate subject of conversion only when it can be described or identified as a specific chattel.'" *Walker v. Hanke*, 992 S.W.2d 925, 933 quoting *Dayton Constr., Inc. v. Meinhardt*, 882 S.W.2d 206, 208 (Mo.App. 1994). "Specific checks, drafts or notes will support a cause of action for conversion where they can be described or identified as a specific chattel." *Dayton Constr.*, 882 S.W.2d at 208–09.

■ Conversion may be proved from a tortious taking, by any use or appropriation of the one in possession in opposition to the rights of the owner, and by a refusal by the possessor after demand from the owner to give up possession. *Reason v. Payne*, 793 S.W.2d 471, 474 (Mo.App.1990). The court in *Reason* allowed submission of a suit for conversion of a savings account where the money never lost is identity,

was in a specific and identifiable account and was never commingled with other funds. *Id.* at 475.

Taking the second amended petition in its most favorable light, it is unclear to this court whether or not the facts of this case support a claim for conversion. The circumstances surrounding the automatic withdrawal of additional monies from Koger's checking account, without his consent, are not clear. Without further information, this court cannot conclude on the record that as a matter of law Koger has no claim for the tort of conversion and keeps in mind that a motion for leave to amend should be liberally granted. Rule 55.33(a). It will be incumbent upon remand for Koger to produce sufficient facts to show the funds taken from his checking account and applied by Hartford to his policy amounted to a conversion.

Further, Hartford at no time has shown that it would be prejudiced by allowing Koger leave to amend his petition. For this reason, and for those reasons stated above, this court feels compelled to remand this case to the trial court with instructions to allow Koger leave to amend his first amended petition with a claim for conversion. By taking this action, the court is not deciding the merits of that claim. As to whether any cause Koger may have would not be in conversion but in unjust enrichment or for money had and received, see *Woods v. Hobson,* 980 S.W.2d 614 (Mo.App.1998) and *Jurgensmeyer v. Boone Hosp. Center,* 727 S.W.2d 441 (Mo. App.1987).

### C. Punitive Damages

Koger takes issue with language in the trial court's judgment pertaining to the effect of Hartford's payment, with interest, of the amount wrongfully taken from Koger's account. Koger, citing *Freeman v. Myers,* 774 S.W.2d 892, 894 (Mo.App.1989), correctly states that without a valid release, mere payment by a defendant of the actual damages does not extinguish any claim by the plaintiff for punitive damages.

The more fundamental problem facing Koger is that all the tort remedies he pled which were ruled against him on summary judgment failed for the reason he could not satisfy at least one element per count raised. Since he was not entitled to submit on actual damages, he was precluded from seeking a punitive award. Similarly, on his attempt to revive in his second amended petition a previous contract remedy, breach of duty of good faith and fair dealing, even if allowed to amend, he could not seek punitive damages. If, upon remand, Koger can make a case for conversion, he will be entitled to seek punitive damages.

### CONCLUSION

Even though Hartford's Premium Increase Letter may have been misleading, the fact that Koger never relied on the letter or agreed to change his premium amounts, effectively nullified any class or individual actions potentially had by Koger. Hartford's mysterious actions in taking excess withdrawals from the insured's bank account, coupled with the hiatus following these withdrawals before returning the funds, allow only the potential, based on the provision of additional facts on remand, for nominal and punitive damages in conversion.

The judgment is in all respects affirmed, with the exception of allowing Koger leave to file an amended petition in conversion.

All Concur.