

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| RELIANCE BANK, | ) | No. ED99837 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | Honorable Richard C. Bresnahan |
| PARAMONT PROPERTIES, LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KEITH BARKET, | ) | |
| | ) | |
| Defendants/Appellants. | ) | Filed: March 25, 2014 |

## Introduction

Paramont Properties, LLC and Keith Barket (Defendants) appeal the judgment of the circuit court granting Reliance Bank (Plaintiff) summary judgment on Plaintiff's claims for breach of a promissory note and breach of a guaranty. On appeal, Defendants argue that the circuit court erred by (1) "striking" their affirmative defense and counterclaim for breach of the covenant of good faith and fair dealing; (2) granting summary judgment for Plaintiff; and, (3) dismissing their wrongful foreclosure counterclaim. We affirm.

**Factual Background**

In February 2008, Defendant Paramont Properties executed a promissory note (the Note) in the amount of $750,000 with Plaintiff, which was secured by a deed of trust on certain commercial property and guaranteed by Defendant Barket.[1] The Note provided for a revolving line of credit, indicated that default would occur for borrower's failure to pay any amount due under the loan, and stated that upon default Plaintiff may declare the entire amount due including principal and accrued interest. In addition, the Note included the following language:

> **ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FOREBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE, REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS IN ANY WAY RELATED TO THE CREDIT AGREEMENT. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT**.

The Note's maturity date was February 20, 2010.

In late 2009, when the balance of the Note was $658,000, Defendant requested an advance under the Note to pay real estate taxes. According to Defendants, Plaintiff requested Defendant to delay any further draws on the line of credit until the loan's maturity date so that Plaintiff could obtain an appraisal of the property. Plaintiff allegedly told Defendant that it would not take any adverse action against Defendant for failure to pay the real estate taxes and that it would extend the line of credit absent a material change in the property's value. Defendant voluntarily accommodated Plaintiff's request and did not make an attempt to draw on the line of credit.

---

[1] Hereinafter, "Defendants" refers to both Paramont Properties and Barket, while "Defendant" refers only to Paramont Properties.

Plaintiff obtained its appraisal on February 3, 2010, which valued the property at $1,580,000. On February 20, 2010, the date of the Note's maturity, the parties executed a written "change in terms of agreement." The modification extended the loan's maturity date to April 20, 2010 and changed the loan to a "term loan." Thereafter, the parties executed two more written modifications, the first extending the maturity date to August 20, 2010, and the second extending the maturity date to April 20, 2011.[2]

However, when the loan matured in April 2011, Defendants failed to pay the amount due under the Note. On June 2, 2011, Plaintiff sent Defendants a letter declaring a default on the Note. On September 22, 2011, Plaintiff purchased the property at a foreclosure sale for $498,000.

Plaintiff filed the instant suit to recover the remaining loan balance of $174,353.08, alleging in a two-count petition breach of the Note and breach of the guaranty. In their answer to the petition, Defendants raised affirmative defenses that Plaintiff's claims are barred, or Defendants are entitled to a set-off, under the doctrine of equitable estoppel and breach of the implied duty of good faith and fair dealing. Defendants also raised counterclaims of equitable estoppel, breach of the implied duty of good faith and fair dealing, and wrongful foreclosure.

Plaintiff moved to strike the affirmative defenses and to dismiss the counterclaims for failure to state a claim upon which relief may be granted. The circuit granted the motion, stating, "[Defendants'] Counterclaims are dismissed in their entirety and the affirmative defenses of equitable estoppel and set off are stricken." Defendants then moved for partial reconsideration of the circuit court's order, which the court denied. Subsequently, Plaintiff moved for summary judgment asserting that there is no genuine issue of material fact as to its claims for breach of the

---

[2] Sometime in the interim, Defendant listed the property for sale. According to Defendants, Plaintiff chilled market conditions by informing prospective buyers that it owned the property and that the property could be purchased for less than the asking price.

3

Note and breach of the guaranty. Defendants did not respond to the summary judgment motion asserting any additional facts. Defendants did, however, file a second motion to reconsider the circuit court's decision to strike the affirmative defenses and to dismiss the counterclaims. The circuit court agreed with Plaintiff and granted summary judgment in Plaintiff's favor on its counts for breach of the promissory note and breach of the guaranty.

**Standard of Review**

Defendants' first and third points on appeal relate to the circuit court's decision on Plaintiff's motion to dismiss for failure to state a claim upon which relief may be granted, which we review de novo. *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 409-10 (Mo. App. W.D. 2000). Regarding a motion to dismiss for failure to state a claim, this Court examines the pleadings, accepting all facts alleged as true and construing them liberally in favor of the pleader, to determine whether the pleader has stated a claim upon which relief may be granted. *Id.*; *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008).

Defendant's second point on appeal addresses the circuit court's decision on Plaintiff's motion for summary judgment, which we also review de novo. *Koger*, 28 S.W.3d at 409-10. When reviewing a decision on a motion for summary judgment, we view all the submissible evidence in the light most favorable to the non-moving party. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is proper if the moving party has shown, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Affirmative Ins. Co. v. Broker*, 412 S.W.3d 314, 318 (Mo. App. E.D. 2013).

4

## Discussion

Because Defendants' first and third points address the circuit court's decision on Plaintiff's motion to dismiss, we consider these points consecutively. We consider last Defendants' second point regarding the court's decision on Plaintiff's motion for summary judgment.

### *Motion to Dismiss*

#### 1.   Breach of the Duty of Good Faith and Fair Dealing

In their first point, Defendants argue that the circuit court erred by "striking" their affirmative defense and counterclaim of breach of the implied duty of good faith and fair dealing because they alleged facts "sufficient to state a cause of action" under *Frontenac Bank v. T.R. Hughes, Inc.*, 404 S.W.3d 272 (Mo. App. E.D. 2012).[3] Plaintiff counters that *T.R. Hughes* is factually distinguishable.

Missouri law recognizes that every contract imposes upon each party a "duty of good faith and fair dealing" in the performance and enforcement of the contract. *Koger*, 28 S.W.3d at 412. "That duty prevents one party to the contract to exercise a judgment conferred by the express terms of agreement in such a manner as to evade the spirit of the transaction or so as to deny the other party the expected benefit of the contract." *Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466, 473 (Mo. App. W.D. 1986). Stated differently, the parties to a contract have an

---

[3] Defendants' Point Relied On misstates the procedural history. As noted, the circuit court struck the affirmative defenses and dismissed the counterclaims. This first point is, thus, unclear with respect to which ruling of the circuit court Defendants challenge. Despite this technical deficiency, *see* Rule 84.04(d), it is evident from the argument portion of Defendants' brief that they challenge the circuit's decision on the motion to dismiss, which in the context of this point pertains only to the counterclaim for breach of the duty of good faith and fair dealing. "While not condoning noncompliance with the rules, a court will generally, as a matter of discretion, review on the merits where disposition is not hampered by the rule violations." *McNeill v. City of Kansas City*, 372 S.W.3d 906, 910 n.3 (Mo. App.W.D. 2012) (quoting *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 822 (Mo. banc 2011)). We exercise such discretion here. Further, because Defendants' argument does not address the court's decision to strike the defense, we consider any argument related to the affirmative defense of the breach of the duty of good faith and fair dealing to be abandoned. *See Weisenburger v. City of St. Joseph*, 51 S.W.3d 119, 124 (Mo. App. W.D. 2001) ("Arguments raised in the points relied on that are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review.").

implied duty to cooperate to enable performance of the expected benefits of the contract and this duty is an enforceable contract right. *McKnight v. Midwest Eye Institute of Kansas City, Inc.*, 799 S.W.2d 909, 914-15 (Mo. App. W.D. 1990). Examples of bad faith resulting in breaches of the covenant include willfully rendering imperfect performance, abusing power in the specification of terms, or wrongfully interfering with or failing to cooperate with the other party's performance. *See Martin*, 710 S.W.2d at 473; *Missouri Consol. Health Care Plan v. Cmty. Health Plan*, 81 S.W.3d 34, 47 (Mo. App. W.D. 2002) (citing Restatement (Second) of Contracts § 205, comment d (1981)). The party alleging a breach of a covenant bears the burden of providing substantial evidence of bad faith. *Koger*, 28 S.W.3d at 412.

To state a claim for breach of the covenant, Defendants must allege facts that Plaintiff acted, or exercised a judgment conferred by the terms of the Note, in such a manner as to evade the spirit of the transaction or to deny Defendants the expected benefit of the Note. *See Missouri Consol. Health Care Plan*, 81 S.W.3d at 46-47. Here, Defendants' claim focuses on Plaintiff's oral statements made in late 2009. According to Defendants, Plaintiff requested that Defendant not draw on the line of credit until Plaintiff obtained an appraisal. Plaintiff also allegedly stated that it would renew the line of credit when the Note matured in February 2010, barring changes in market conditions, and would not take adverse action for Defendant's failure to pay the real estate taxes.

In light of these statements, we begin our analysis with respect to whether Defendants have stated a claim for breach of the duty of good faith and fair dealing with the express terms of the Note. The Note, and each subsequent written modification, expressly provides:

> **ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE.**

6

As this provision plainly indicates, no contractual expectancy ever existed that Plaintiff's oral promises made in 2009 would be valid, binding, enforceable or otherwise create a contractual benefit. Simply put, the spirit of the transaction did not contemplate oral modifications of any kind. Nor did the Note and its written modifications specifically contemplate extension of the line of credit upon maturity of the loan or leniency in the event of a default. Indeed, "[t]here is no authority for the proposition that a party has an implied duty of good faith and fair dealing to agree to renew a contract that is set to expire by its negotiated terms." *State v. Nationwide Life Ins. Co.*, 340 S.W.3d 161, 194 (Mo. App. W.D. 2011).

Defendants suggest that Plaintiff's statements were designed to engineer a default by inducing Defendant not to draw on the line of credit. Such a conclusion—that Plaintiff's oral promises caused the default—is not reasonably inferred from the pleadings. Indeed, Defendants do not allege that Plaintiff actually prevented Defendant from making the draw before the Note's original February 2010 maturity date, or that Defendant actually attempted to make a draw and was refused, and that as a result Defendants defaulted on the loan. That Plaintiff requested Defendant not to make the draw does not imply that Plaintiff acted in bad faith or that Defendant was wrongly denied the benefit of the Note. Such a conclusion is pure speculation. Instead, and as Defendants admit, Defendant voluntarily chose not to draw on the line in late 2009 to accommodate Plaintiff's request. Defendants' failure to pay the amount due on the Note upon its maturity, more than a year after Plaintiff's oral promises, caused the default under the Note. "[A] party [does not] breach its implied duty of good faith and fair dealing by ending a contractual relationship in the manner provided by the contract." *Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 878 (Mo. App. E.D. 2012). As such, none of the alleged facts in

Defendants' pleading, accepting them as true, support a claim that Plaintiff acted in bad faith as to defeat the expected benefit or spirit of the Note.

Defendants, nonetheless, assert that dismissal of their good faith and fair dealing claim is improper under *T.R. Hughes*, 404 S.W.3d at 272. In that case, the bank refused to permit the defendants to draw on a line of credit, citing a clause in the note that permitted the bank to refuse advances based on the bank's own insecurity and the defendants' insolvency, despite the fact that the defendants were current on all outstanding loans. Because the defendants used the loan to service interest on other loans, the defendants defaulted on the related loans. Finding that material issues of disputed fact existed with respect to whether the bank was insecure and the defendants insolvent—and consequently whether the bank acted in good faith by refusing the advance under the note—this Court reversed the circuit court's grant of summary judgment. *Id.* at 281-82.

We agree with Plaintiff that *T.R. Hughes* is factually distinguishable from this case. Unlike the present matter, the bank in *T.R. Hughes* did not merely request that the defendants not draw on the line of credit or refuse further advances upon the note's maturity. Rather, the bank denied the defendants permission to draw on the line, justifying this refusal on a provision of the note that permitted the bank to deny an advance under certain circumstances. *See T.R. Hughes*, 404 S.W.3d at 279-82. This action caused the *T.R. Hughes* defendants to default on their loans. In this case, however, it is undisputed that Defendants' failure to pay the amount due under the Note upon its maturity caused the default. Unlike the bank in *T.R. Hughes*, Plaintiff did not exercise any judgment by refusing further advances, but simply sought to enforce its contractual rights upon the Note's maturity and termination of the parties' contractual relationship. As such,

the indicium of wrongdoing present in *T.R. Hughes*, which primarily concerned whether the bank exercised its discretion in good faith, does not exist in the present matter.

If this Court applied *T.R. Hughes* in the manner that Defendants advocate, it would extend liability for breach of the covenant to those instances in which a contractual relationship ends in the manner contemplated by the parties' contract. By analogizing *T.R. Hughes* to this case, Defendants interpret *T.R. Hughes* too expansively and attempt to broaden the covenant of good faith and fair dealing to encompass acts other than those made in bad faith. However, *T.R. Hughes* did not expand the covenant in this manner. Instead, *T.R. Hughes* abided by the traditional understanding of the doctrine.[4] Defendants have simply failed to raise factual allegations indicating any bad faith on behalf of Plaintiff. Accordingly, *T.R. Hughes* does not mandate a different result in this case.

The circuit court did not err by dismissing Defendants' counterclaim for breach of good faith and fair dealing. Point I is denied.

## 2. Wrongful Foreclosure

In their third point, Defendants argue that the circuit court erred by dismissing their wrongful foreclosure counterclaim because their pleadings sufficiently alleged an inadequate sale price and irregular conduct. In the argument portion of their brief, Defendants focus primarily on their allegations of Plaintiff's wrongful conduct, citing *American First Fed., Inc. v. Battlefield Ctr., L.P.*, 282 S.W.3d 1, 9 (Mo. App. E.D. 2009) (indicating that lack of "full opportunity for competitive bidding" may be wrongful conduct to set aside a sale). In response, Plaintiff

---

[4] A review of the Court's analysis in *T.R. Hughes* shows that the Court relied on established principles of good faith and fair dealing. *See T.R. Hughes*, 404 S.W.3d at 279-82 (discussing principle espoused in *Schell v. Lifemark Hosps.*, 92 S.W.3d 222, 230 (Mo. App. W.D. 2002), that good faith imposes a duty "to prevent opportunistic behavior, that is, the exploitation of changing economic conditions to ensure gains in excess of those reasonably expected at the time of contracting."). In concluding that a question of fact existed whether the bank acted in good faith by declaring a default, the *T.R. Hughes* Court simply assessed the conflicting evidence relevant to good faith, as it is understood in our law, and applied the rules of summary judgment.

contends that the foreclosure sale price was not inadequate, citing numerous cases in which courts upheld foreclosure sales that were less than that in this case.[5]

To set aside a foreclosure sale on equitable grounds, a party must establish an inadequate sale price and other wrongful acts, such as fraud, unfair dealing, or mistake involved in the sale proceedings. *American First Fed., Inc.*, 282 S.W.3d at 8-9. A sale price is inadequate if it is "so gross that it shocks the conscience . . . ." *T.R. Hughes,* 404 S.W.3d at 279 (citation omitted).

Defendants do not expressly argue on appeal that their pleadings support a claim of an inadequate sale price and, instead, rely almost exclusively on their allegations of wrongful conduct. However, Defendants' pleading states that Plaintiff purchased the property "for a price well below the fair market value," given that the property was appraised for $650,000 and Plaintiff purchased the property for $450,000.[6] This sale price of $450,000 is 69.2 percent of the fair market value, which, as Plaintiff notes, does not shock the conscience and is well within the range of sale prices upheld as adequate by Missouri courts. *See, e.g., American First Fed., Inc.*, 282 S.W.2d at 8-9 (upholding foreclosure where sale price was 50 percent of fair market value); *In re Foreclosure of Liens for Delinquent Land Taxes by Action in Rem*, 190 S.W.3d 416, 419 (Mo. App. W.D. 2006) (upholding tax sale price that was 68 percent of the fair market value because it did not shock the conscience). *But see In re Manager of the Div. of Fin. of Jackson County v. La-Sha Consulting, Inc.*, 224 S.W.3d 605, 607 (Mo. App. W.D. 2006) (holding sale prices inadequate that were less than 10 percent of the discounted land value in a tax sale). Thus, even assuming *arguendo*, that Defendants adequately pleaded wrongful conduct with respect to

---

[5] *See, e.g., First Bank v. Fischer & Frichtel, Inc.*, 364 S.W.3d 216, 223 n. 11 (Mo. banc 2012); *Smith v. Equitable Life Assur. Soc. of the U.S.*, 448 S.W.2d 588, 594 (Mo. 1970); *Cockrell v. Taylor*, 145 S.W.2d 416, 422 (Mo. 1940).

[6] It does not appear to be disputed that Plaintiff obtained a second appraisal before the foreclosure sale. Further, although Defendants' pleading states that the property was sold for $450,000, the record reflects that the property was actually sold for $498,000.

their wrongful foreclosure claim, the pleadings fail to allege an inadequate sale price. Defendants have failed to raise a contrary argument or cite to any authority indicating otherwise. As such, the circuit court properly dismissed Defendants' counterclaim for wrongful foreclosure. Point III is denied.

### *Summary Judgment*

Finally, Defendants' second point is that the circuit court erred by granting Plaintiff's motion for summary judgment because Defendants' affirmative defense and counterclaim for breach of the duty of good faith and fair dealing is a viable defense to summary judgment. Clearly, Defendants' second point is predicated entirely on their first point. We have already concluded that the circuit court did not err by dismissing Defendants' counterclaim for breach of the duty of good faith and fair dealing and that Defendants have abandoned any claim of error that the circuit court improperly struck the affirmative defense. Accordingly, Defendants' argument that summary judgment was improper fails. Defendants do not otherwise allege the existence of any material factual dispute that would bar summary judgment in Plaintiff's favor. The circuit court did not err by granting summary judgment for Plaintiff. Point II is denied.

### Conclusion

The judgment of the circuit court is affirmed.

_____
Philip M. Hess, Judge

Lisa Van Amburg, P.J. and
Patricia L. Cohen., J. concur.

11