WALTER C. GUELS, Administrator of the estate of ERASMUS McGINNIS, Appellant, v. MISSISSIPPI VALLEY TRUST COMPANY and MARGARET STARK, Co-executors under the will of CHARLES B. STARK, and MISSISSIPPI VALLEY TRUST COMPANY, Trustee, and MARGARET STARK, Beneficiary.—49 S. W. (2d) 60.

Division One, April 2, 1932.

*Hugh K. Wagner* for appellant; *Nagel & Kirby* and *Everett Paul Griffin* of counsel.

*Charles A. Houts* for respondents.

STURGIS, C.—This is the second appearance of this case in this court, having been appealed the first time because of the trial court having sustained a demurrer to the petition, and is reported as Guels v. Stark, 264 S. W. 693. Having been reversed and remanded, the case was tried on the petition, which we held stated a good cause of action. The original plaintiff, Erasmus McGinnis, died while the case was pending here on the former appeal and by stipulation was revived in this court in the name of Walter C. Guels, Administrator. Before the case was retried, the defendant, Charles B. Stark, also died and the case was revived in the circuit court in the name of Mississippi Valley Trust Company and Margaret Stark, Co-trustees, and Margaret Stark, Beneficiary under Stark's will. In other words, the present plaintiff takes the place as successor in title of the original plaintiff, Erasmus McGinnis, and the present defendants are the successors in title of the original defendant, Charles B. Stark. The case is yet essentially that of McGinnis v. Stark and they will be referred to as plaintiff and defendant respectively.

As said on the former appeal of this case, the plaintiff, by his petition, "asks for an accounting to ascertain the balance due from him to defendant; that he be permitted to pay in cash to defendant the amount ascertained; and that defendant be required thereupon, simultaneously with such payment, to reconvey to plaintiff certain pieces of real estate theretofore mortgaged and bought in by and for defendant, and also certain other real estate and certain shares of stock in a mining company bought at sales under executions in favor of this defendant and against the plaintiff."

When this case came on for retrial, the rulings of this court on the former appeal became the law of the case to be followed on such retrial.

It will not be necessary to restate the entire case and we refer to the former opinion for a fuller statement of the issues involved. It will suffice at present to say that in July, 1918, the plaintiff, McGinnis, stood indebted to defendant, Stark, in the sum of $23,220 plus the interest thereon at seven per cent from December 6, 1917, and costs, as evidenced by a judgment of that date in the Circuit Court of St. Louis. This judgment was based on a note given May 12, 1910, by McGinnis to Stark for borrowed money. This indebtedness from McGinnis to Stark (the note reduced to judgment) was secured by deed of trust with power of sale duly executed by McGinnis, of date May 12, 1910, conveying as security a half interest in a certain business house and lot on Fifteenth Street in Denver,

Colorado, and designated herein as the Denver property; also by a real estate mortgage with power of sale dated June 30, 1915, conveying as additional security an undivided nine-twentieths of a tract of wild land in Chicot County, Arkansas, known as Belle Island. This island was formed by the Mississippi River cutting through a narrow neck and leaving the island between the old and new channel. This debt, secured by these mortgages and reduced to judgment, was of long standing, was long past due, and Stark had been endeavoring to collect the same. The last extension of time given by Stark to McGinnis was from January 11th to May 1, 1918, which recites in writing that other creditors than Stark were pressing McGinnis to pay debts, and he agreed not to go into bankruptcy voluntarily, and if forced to do so, or his property be seized under some attachment or judgment, then Stark would be free to enforce his mortgages or his judgment. In connection with this extension, agreement McGinnis executed and gave to Stark deeds of absolute conveyance to the Denver and Arkansas properties with the name of the grantee in blank, so that in case of the sale of either or both these properties under Stark's mortgages, the purchaser's name could be filled in and delivered, thus insuring the purchaser a good title.

The plaintiff, McGinnis, failed to pay by May 1st, and about July 1, 1918, Stark commenced proceedings to foreclose his mortgage liens on both the Arkansas and Denver properties by advertising and selling same. He advertised the Arkansas property, Belle Island, for sale under his mortgage on July 8, 1918, and the Denver property under his deed of trust on July 22, 1918, and the sales were had on such days respectively. At the sale of the Arkansas property Stark's sister became the purchaser at $3,000 and received a mortgagee's deed conveying same to her. The deed which McGinnis had executed in blank was completed by inserting her name as grantee and delivered and recorded. Any other purchaser would have received these same muniments of title. Stark's sister purchased for him and later conveyed the property to him. The mortgage, however, gave Stark the right to purchase at his own foreclosure sale.

The matter chiefly complained of in this suit as grounds for setting aside the sale and for an accounting is that a misdescription of the Arkansas land was made in the published notice of the sale, thus rendering that sale unfair and voidable. This court so held on the former appeal under the facts alleged in the petition, and the proof on this trial sustained the facts as there alleged. The variance in the description of the Arkansas land as contained in the McGinnis mortgage to Stark and the notice of sale as published was shown to be as stated in the petition, copied in our former decision. What

this court then said as to the allegations of the petition in regard to the misdescription is applicable here to the facts as shown on this trial, to-wit:

"In this case the description of the Belle Island property in the advertisement did not follow the course of the description as given in the mortgage. There is a transposition of words. The plaintiff contends that the description in the advertisement is erroneous, defective and misleading. The plaintiff contends that in the advertisement the words, 'known as Belle Island,' should be held to refer to and qualify the words, 'excepting fractional sections 33, 34, and 27 in township 16, range 1 east.' The defendant contends that the words, 'known as Belle Island,' refer to the tract sold, and not to the tracts so excepted. Defendant's counsel urge that the words, 'known as Belle Island,' may be eliminated from the description as given in the advertisement, and a complete and certain description will remain. *This, we think, is true.*"

This court held, however, that notwithstanding there was no legal misdescription in the notice of sale of the Arkansas land, and that the purchaser thereunder acquired a good title, yet the effect of the somewhat ambiguous and uncertain description as contained in the notice of sale on prospective bidders might well be held to deter such bidders from attending or buying at the sale, and that on discovering this condition it was the duty of the mortgagee, Stark, to stop the sale till such supposed error in the description could be corrected. It was held that if the manner in which the description was worded by defendant raised a question as to its correctness which was shown to have reasonably prevented persons from bidding at the sale, the mortgagee, on discovering such misleading description, should not have proceeded to sell the land and become, himself, the purchaser.

Applying the reasoning of this court to the facts as developed, the trial court found the evidence sufficient to show that prospective bidders were deterred from bidding on this Arkansas land on account of the uncertain description, and that the land sold for less than its reasonable value, and ruled that the sale of the Arkansas land known as Belle Island should be set aside on payment to the Stark estate (defendants) of the amount yet due on the McGinnis indebtedness, which was agreed to be $20,285.20. Judgment was entered accordingly.

The record further shows that Stark credited the proceeds of the sale of Belle Island in Arkansas on the note and judgment and then proceeded to collect the balance. He next caused the Denver property to be sold under his deed of trust and credited the proceeds of that sale, $7,500, less costs, on the McGinnis indebtedness to him. The indebtedness not being yet paid, executions were sued out on

the judgment and a house and lot in St. Louis and some mining stock belonging to McGinnis were sold and the proceeds applied in the same way. Also executions were issued to several other counties in this State and real estate of McGinnis there situated was sold and the proceeds applied on this same indebtedness.

The trial court found on the evidence that there was no fraud or irregularity in connection with these other sales, but that same were fairly conducted. In fact, no fraud or ground for setting aside the other sales, independent of the sale of the Arkansas land, is claimed other than such a gross inadequacy of price as amounts to fraud, which is not sustained by the evidence. The trial court refused to set aside the other sales.

Perhaps the matter will be better understood by setting out the gist of the judgment appealed from, to-wit:

The court "doth find the issues joined in favor of the plaintiff with respect to the Belle Island property, described in the second amended petition and situate in Chicot County in the State of Arkansas, and against the plaintiff in respect to the other real estate described in the second amended petition, and against the plaintiff in respect to the stock in the Queen Mineral Ranch Mining Company, mentioned in the said second amended petition.

"2. Under the law and the evidence, the court adjudges and declares that the plaintiff shall be given credit on his debt stated in the second amended petition for all sums realized by Charles B. Stark from the plaintiff's intestate and his property; that the balance of the said debt shall be ascertained after allowing all the said credits; that interest at the rate of six per cent (6%) per annum to the date of this decree and from the respective dates of the said credits shall be added to the said ascertained balance of the said debt; that, from the said total, there shall be deducted any net income derived from the Belle Island property by the said Charles B. Stark or his privies; and that, upon the payment of the balance due as last aforesaid to the defendants, the foreclosure of the mortgage on the Belle Island property shall be set aside and title thereto vested in the plaintiff.

"3. By agreement of the parties, the court finds and holds that the net balance of the debt and interest due at the date of this decree by the McGinnis estate to the estate of Charles B. Stark on the basis last aforesaid is twenty thousand, two hundred and eighty-five dollars and twenty cents ($20,285.20).

"4. The court finds that there is no evidence to warrant an order or judgment authorizing the redemption of any of the other property mentioned in the petition, except the Belle Island property.

"5. The court finds that no fraud has been established in this case, other than that which may be said to inhere in the sale of the Belle Island property under an erroneous description. . . .

"8.   The court finds and holds that no evidence of fraud was adduced at the hearing so far as the other properties are concerned.

"9.   The court holds that a court of equity acts *in personam,* and, when it has jurisdiction of the parties to the suit, can compel the defendant to make deeds and do other acts of restitution, although the subject-matter of the suit—real or personal property—is situate in another state or country.

"10.   The court holds that a mortgagee with a power of sale and the right to buy at his own sale is a trustee for the mortgagor and is required by law to act with the utmost good faith and fairness in making the sale, so as to protect the interests of the mortgagor.

"11.   The court holds that, if by the act of the mortgagee even but one bidder is prevented from bidding or from attending the sale, the sale should be set aside. The mortgagee must not do anything which would prevent competition at the sale.

"12.   It is further ordered, adjudged, and decreed that the plaintiff recover of the defendants the costs of this cause and that execution issue therefor."

The defendant did not appeal. The plaintiff appeals on the ground that the trial court did not award him the full measure of the relief to which he is entitled in that the sale of all the property sold under the Colorado deed of trust and the executions on the judgment should also be set aside.

The appellant's position, as we understand it, is that when the first sale, that under the Arkansas mortgage, being voidable because of the misleading description of the land in the notice of sale and the inadequate price at which it was sold, and no innocent purchaser being involved, was rightfully set aside, then, as a matter of law, the plaintiff is entitled to have the subsequent sales made to collect the same debt also set aside, whether made under the Colorado deed of trust or execution issued on the Missouri judgment. The contention is that when defendant, Stark, became aware of the misleading description of the Arkansas land, and that the same was likely to and did in fact suppress bidding at such sale, he should have not only called off that sale, but was without authority to sell other property under another deed of trust or on an execution on the judgment based on and to satisfy the same indebtedness, however fair and free from fraud might be such other sales. Such other sales are alleged to have been at grossly inadequate prices, but that fact is not supported by the evidence and is not relied on as constituting a sufficient independent ground for setting aside such sales.

Plaintiff cites a number of cases to the effect that under a mortgage or execution a beneficiary cannot sell or cause to be sold more property than is sufficient to discharge the indebtedness due him, and that when enough property has been sold to discharge the indebted-

ness, a further sale is unauthorized and void. [Wells v. Estes, 154 Mo. 291, 299; Baker v. Halligan, 75 Mo. 435; Kelsay v. Farmers' & Traders Bank, 166 Mo. 157, 173; 23 C. J. 322, sec. 35, and p. 622, sec. 565.] Such, however, is not this case. If we treat the Arkansas mortgage, the Colorado deed of trust, and the judgment on the secured note as cumulative remedies to collect the same debt, and that a satisfaction of the one secured debt operates to discharge all of the liens, yet this debt was not discharged or satisfied, either legally or equitably, by the sale or attempted sale of the Arkansas land. "Partial satisfaction does not preclude the right to issue execution for the balance due on the judgment." [23 C. J. 323; 23 C. J. 450.] And the same principle applies to sales under the same or different mortgages given to secure one indebtedness. On the former appeal of this case, this court said: "A mortgagee, having sufficient or cumulative securities given for the payment of a single debt, ordinarily may pursue any or all the several remedies appropriate thereto until his debt is satisfied."

In Herrick v. Swartwout, 72 Ill. 340, the court said: "The levy of an execution upon real estate of sufficient value to satisfy it, does not, like the levy of an execution on personal property, operate, while the levy is undisposed of, as such a satisfaction of the judgment as will bar an attempt to enforce its collection in any other manner."

In McKinney v. Miller, 19 Mich. 142, Judge Cooley said: "One who holds several mortgages as mortgagee, to secure a single debt, may foreclose either of them at his option separately until his debt is satisfied."

The Supreme Court of Kansas, in the case of Conklin v. Stackfleth, 65 Kan. 310, announced the same rule of law.

The suggestion is made that defendant should be charged with the amount the Belle Island property should have sold for at a fair sale unhampered by a doubtful title in the purchaser, to-wit, the fair market value of the same, and that such fair market value would have paid the entire debt. This, however, is not a suit for damages to be measured in that way, and even if that rule be applied, the evidence did not convince the trial court, nor does it convince us, that a fair sale of that property would have extinguished the debt so as to make any further sale void. There was due on this indebtedness over $24,000 at the time of the sale, and plaintiff's evidence does not show a nine-twentieths interest in that property to be worth that amount. The plaintiff made little effort to show the fair market value of the property sold subsequently or that it was much in excess of the amount realized, which, being credited, leaves an agreed balance due of $20,285.20.

We desire to say also that there is no evidence that defendant Stark, through a "spirit of greed" or with a sinister design to take advantage of McGinnis' inability to pay this indebtedness, purposely described the Arkansas land in the notice of sale in such a way as to prevent bidding on that land for fear of a bad title and possible law suit, and with the intent to acquire it at a sacrifice sale. The facts do not impress us that way and courts should not impute dishonesty or bad motives without cause. There is no reason to believe that the uncertain description in this notice of sale was other than a mere inadvertence made in perfect good faith. Stark seems not to have discovered the uncertainty of the description till his attention was called to it when reading the notice of sale to the assembled bidders and he was puzzled to know what to do. The fact that we now hold, in the light of the whole facts, that he ought not to have gone ahead with the sale is far from holding that he designedly brought about this condition of affairs with the intent to prevent bidding thereby. While no one testified that he intended to and would have bid a larger price than the land sold for, yet we hold that the sale should be set aside as unfair where there is any irregularity or anything said or done by the mortgagee, who became purchaser, which was reasonably calculated to prevent free and unhampered bidding.

We, therefore, recognize the correctness of plaintiff's contention that a mortgagee, when selling under a power of sale, is a trustee for the mortgagor and is required to act in good faith and with absolute fairness in making the sale so as to protect the mortgagor. [19 R. C. L. 612, sec. 428; Stoffel v. Schroeder, 62 Mo. 147, 149.] And where the mortgagee is permitted to and does buy the property at his own sale at an inadequate price, then the court will look into the proceedings and circumstances, and if any substantial irregularity or probable unfairness appears, the sale will be set aside. [23 C. J. 678; 41 C. J. 1027; Nelson v. Brown, 23 Mo. 13; Durfee v. Moran, 57 Mo. 374, 379.] These principles of law have been followed in this case in setting aside the sale of Belle Island in Arkansas.

The proposition of law is presented in one of plaintiff's "Points and Authorities" that if a creditor holds several mortgages on different properties to secure the same debt, and attempts to foreclose one of them and buys in that property at an inadequate price, and such sale is tainted with such fraud or unfairness as to warrant the court in setting it aside, then such creditor cannot, while *holding onto the property so sold* and thus preventing the debtor from selling or using it so as to raise money to pay off his debt, sell other property under a different mortgage to secure the same debt or under execution on a judgment for the same debt. Applying this contention to this case, it means that because the facts connected with the sale of the Arkansas property warrant the court setting aside that sale,

such fact prevented defendant from selling the Colorado property or any property in Missouri, and such subsequent sales, while fair in every respect, must also be set aside.

To sustain this proposition, the plaintiff cites 41 Corpus Juris, 1026, to this effect: "Where the sale is unfairly conducted as regards some of the property, the entire sale should be set aside, the rights of innocent parties not being involved, although no unfairness is shown as to another tract sold at the same time." The only authority cited to sustain the text is Lalor v. McCarthy, 24 Minn. 417. This case does not go to the extent that the text indicates. In that case a mortgage with power of sale conveyed what was designated as being three tracts of land, but in reality Tracts 1 and 2 joined each other and constituted but a single tract covered by one building. The same could not be divided and sold as separate tracts except at great loss, which actually occurred, and the court set aside the sale as to these two tracts as unfair to the mortgagor. The third tract was sold at the same time at a fair sale and was bought in by the same person who had participated in and profited by the unfair sale of the other two tracts sold separately but which should have been sold as one. The court set aside the sale as to this third tract also, but not because such was a necessary consequence of the sale being unfair as to the first two tracts, or because, the sale being unfair as to the first two tracts sold, it would follow, as a matter of law, that the entire sale would be set aside. Such result would depend on the facts of the particular case. In that case there was but one sale under one mortgage, though of more than one tract of land, but they were not separate and independent sales of land in different states having no connection with each other except as security for the same debt. Without going into the details, it is sufficient to say that the whole tenor of that case is to the effect that where the sale of several tracts of land are made under one mortgage, the fact that the sale is unfair as to one tract, warranting the court in setting aside the sale as to that tract, does not necessitate, as a matter of law, the setting aside of the sale of the other tracts where no fraud or unfairness is shown. The court, in effect, held that as the mortgagee has the right to foreclose either mortgage given to secure a single debt, and may sell under either one, at his discretion, one or more pieces of property, the validity of one such sale is not necessarily dependent on the validity of another. Whether it is or not depends on the facts of each particular case. Other facts were given why that sale should be set aside as to all the land.

Nor does Hendricks v. Calloway, 211 Mo. 536, 565, support plaintiff's contention. There plaintiffs' mother died owning three forty-acre tracts of land covered by a deed of trust. W. J. Calloway wanted to purchase two of the forty-acre tracts, designated as Tract

A, and was willing to pay enough for that tract to pay the entire mortgage, leaving the other forty acres, Tract B, unsold with title in the children, plaintiffs, subject to the father's life estate of curtesy. Plaintiffs' father desired to acquire full title to Tract B and he and Calloway conspired and carried out a plan to have the entire tract sold for the amount Calloway was willing to pay for Tract A and then convey back to the father Tract B. This amounted to selling more land, Tract B, than was necessary to sell in order to pay the entire secured debt. The sale was had at an unusual hour and bidding was otherwise suppressed. The court held the entire sale to be voidable unless prevented, as was the case as to Tract A, by its going into the hands of an innocent purchaser. That sale, however, was an entirety under one deed of trust and to one purchaser for a gross amount and not separate and severable sales of different tracts at different prices, or, as here, at distinct independent sales having no connection with each other except made to pay a single indebtedness, and where one sale only was tainted with unfairness.

This disposes of the case on its merits and makes unnecessary the discussion of other points raised except to dispose of a motion filed by plaintiff in this court to make the Northern Trust Company of Chicago, Illinois, a party plaintiff as successor in title to the real estate involved, subject to the right of the administrator to sell same by authority of the probate court to pay debts of the original plaintiff now shown to be unpaid for want of assets. The original plaintiff died while this case was pending in this court on the former appeal and on suggestion of his death the case was then, by stipulation, revived in the name of the administrator. The point was afterwards raised by defendants' demurrer in the trial court that the successor in title to this land was a necessary party to the prosecution of the case. The point was ruled in plaintiff's favor and defendants answered over and went to trial. Although the trial court found for plaintiff as to the Arkansas land, the defendants have not appealed and plaintiff is now willing to correct the defect, if any, as to parties plaintiff. As we are affirming the judgment on the merits and defendants have abandoned the point by not appealing, it will best accord with proper procedure to sustain the motion so that all parties at interest will be parties to this cause. The joint motion of plaintiff and the Northern Trust Company of Chicago, Illinois, to make said Trust Company a party plaintiff is sustained.

The judgment of the trial court is affirmed. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by Sturgis, C., is adopted as the opinion of the court. All of the judges concur.