**AMERICAN FIRST FEDERAL, INC., Respondent,**

v.

**BATTLEFIELD CENTER, L.P., et al., Appellants.**

**No. ED 90672.**

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 20, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 10, 2009.

Application for Transfer Denied May 26, 2009.

John E. Toma, Jr., Melissa M. Zensen, Saint Louis, for Appellants.

Paul J. Puricelli, Robb E. Hellwig *, Saint Louis, MO, for Respondent.

## OPINION

GLENN A. NORTON, Judge.

Battlefield Center, L.P. ("Maker") and Christopher J. Kersten ("Guarantor") (collectively "Defendants") appeal from the grant of summary judgment in favor of American First Federal, Inc. ("Holder") on its claims demanding payment for the balances due under three notes executed by Maker and guaranteed by Guarantor, and on Defendants' counterclaim for wrongful foreclosure. We affirm.

## I. BACKGROUND

In February 2003, Maker executed three promissory notes ("Notes") in favor of Allegiant Bank [1] in order to borrow money

---

\* Temporarily admitted in MO pursuant to Rule 8.06.

1. Although we are aware that National City Bank of the Midwest, NA purchased Allegiant

totaling approximately $2,175,000.00 in connection with its leasehold property in Springfield, Missouri (the "Property"). As security for the Notes, Maker executed three leasehold deeds of trust ("Deeds of Trust") in favor of Allegiant Bank and its assignees naming Maker's interest in the Property and its improvements as collateral. In addition, Guarantor executed a guaranty ("Guaranty") guaranteeing payment and performance of the Notes to Allegiant Bank and its assignees.

Over the course of the following year, Maker fell behind on its payments under the Notes. As a result, on March 31, 2004, Maker and Allegiant Bank entered into a forbearance agreement. Under the terms of the forbearance agreement, Allegiant Bank agreed not to institute a cause of action or foreclosure proceedings based on Maker's failure to pay until August 5, 2004. After Maker again defaulted, Maker and Allegiant Bank entered into a settlement agreement on September 28, 2004. The settlement agreement extended the maturity dates of the Notes until July 31, 2005.

Allegiant Bank decided to sell its interest in the Notes to Holder under the terms of an asset sale agreement on December 10, 2004. Allegiant Bank assigned the three Deeds of Trust to Holder as part of the transaction. Also in connection with the transfer, Allegiant Bank executed three allonges (papers annexed to their respective negotiable instruments) specifically making the Notes payable to Holder rather than Allegiant Bank.

Holder sent Maker a notice of default on February 15, 2005, after Maker failed to make scheduled payments on the Notes in accordance with the settlement agreement. Holder explained that it would accelerate the balance due on the Notes if Maker did

not cure the default on or before March 2, 2005. When Maker failed to cure the default, Holder's successor trustee under the Deeds of Trust sold the Property at a foreclosure sale to the highest bidder, Eureka Properties, LLC, on April 29, 2005. Eureka, which was designated as a qualified intermediary for purposes of I.R.C. section 1031 exchanges, purchased the Property for $1.5 million. On September 14, 2005, Eureka transferred the Deeds of Trust to an entity called Battlefield Properties, LLC. Arthur Berg, who owns and manages Battlefield Properties, is also the owner of Holder.

After applying the proceeds of the foreclosure sale to the balance due on the Notes, Holder brought an action against Maker and Guarantor to recover the remaining balance due. Defendants then filed a counterclaim against Holder for wrongful foreclosure. The trial court granted Holder's motion for summary judgment on its claims and on Defendants' counterclaim, and entered judgment against Maker and Guarantor in the amount of $1,163,847.28. This appeal follows.

## II. DISCUSSION

### A. Standard of Review

Because the propriety of summary judgment is purely an issue of law, our review on appeal is essentially de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered. *Id.* Facts set forth by affidavit or otherwise in support of the summary judgment motion are taken as true unless contradicted by

Bank at some point during the course of the transfer of Allegiant Bank's interest to Holder,

we will refer only to Allegiant Bank as the parties did in their briefs.

the non-moving party's response. *Id.* Further, we accord the non-movant the benefit of all reasonable inferences from the record. *Id.* We will affirm a grant of summary judgment when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.*

### B. Holder Had Standing to Sue Guarantor on His Guaranty

In Defendants' first point, Guarantor argues that the trial court erred in granting summary against him on Holder's claims to recover the remaining balance due under the Notes because Holder did not have standing to sue him on his Guaranty. According to Guarantor, Holder did not show that it paid any consideration for the Guaranty, that it took title to the Guaranty, or that it had the right to enforce the Guaranty.

■ Initially, we note that Guarantor's argument does not address the claim set forth in his point relied on that Holder failed to demonstrate that he paid consideration for the Guaranty. "When matters referenced as alleged error in a point relied on are not developed in the argument portion of a brief, they are deemed abandoned." *Saunders–Thalden and Associates, Inc. v. Thomas Berkeley Consulting Engineer, Inc.*, 825 S.W.2d 385, 387 (Mo. App. W.D.1992). Accordingly, we will only consider Guarantor's claims that Holder did not take title to or have the right to enforce the Guaranty.

As a "claimant" moving for summary judgment, Holder has the burden of proving that there is no genuine dispute as to those material facts upon which it would have the burden of persuasion at trial. *ITT Commercial Finance Corp.*, 854 S.W.2d at 381. For Holder to recover on a contract of guaranty, he must show that: (1) Guarantor executed the Guaranty; (2) Guarantor unconditionally delivered the Guaranty to Holder; (3) Holder, in reliance on the Guaranty, thereafter extended credit to the debtor; and (4) there is currently due and owing some sum of money from the debtor to Holder that the Guaranty purports to cover. *Id.* at 382.

In Defendants' brief, Guarantor challenges only the second element of the cause of action, i.e., whether Guarantor unconditionally delivered the Guaranty to Holder. In doing so, Guarantor focuses on the documents demonstrating the ultimate transfer of the Notes from the original holder, Allegiant Bank, to Holder. First, Guarantor observes that the allonges by which Holder took title to the Notes do not refer to the Guaranty. Second, to the extent the asset sale agreement between Allegiant Bank and Holder contemplates a transfer of the Guaranty, Guarantor argues that the asset sale agreement itself is not designed to convey title to the Notes or Guaranty. He also asserts that the document described in the asset sale agreement as conveying title, called the "Bill of Sale," was not produced. Third, although Guarantor acknowledges that the Guaranty contains a provision expressly stating that it is transferable, he contends that this language alone does not result in a transfer of the Guaranty. We discuss each argument below.

#### 1. The Allonges

The record contains three allonges which provide evidence of the transaction transferring the Notes and Guaranty from Allegiant Bank to Holder. Guarantor is correct in noting that the allonges do not specifically refer to the Guaranty. The allonges are the only documents in the record which indicate that Holder acquired title to the Notes. After referring to its respective Note, each allonge states that "[i]t is intended that this Allonge be at-

tached to and made a permanent part of the Note." The allonges then state that they are "[p]ayable to the order of [Holder], without recourse, representations or warranties of any kind."

## 2. The Asset Sale Agreement

■ The asset sale agreement between Allegiant Bank and Holder further provides evidence of the transaction transferring Defendants' obligations to Holder. The asset sale agreement states that it is setting forth "the terms and conditions whereby [Allegiant Bank] agrees to sell and [Holder] agrees to purchase the Loan(s) identified herein." The term "Loan(s)" is defined as the loan obligations and debts evidenced by the "Note(s)" and includes, among other items, "each Collateral Document … [and] all rights, title, interests, powers, liens or security interests of [Allegiant Bank] in, to or under each Collateral Document." "Collateral Document" is defined to include "*guaranties*, and other agreements or documents, whether an original or a copy and whether or not similar to those enumerated, evidencing, securing, guarantying or otherwise documenting or giving notice of the Loan(s) and any performance or payment obligations with respect thereto." (emphasis added). Finally, under the heading "Transfer of Loan(s)," the asset sale agreement explains that in order to effect a transfer of the "Loan(s)," Allegiant Bank will deliver a Bill of Sale "selling, assigning, transferring and conveying to [Holder] all rights, title and interests of [Allegiant Bank] in, to and under the Loan(s)."

Holder argues that the asset sale agreement is sufficient to demonstrate that an express transfer of the Guaranty occurred. Reviewing the record, however, we agree with Guarantor that a completed Bill of Sale is missing. Accordingly, even though we find that (1) the asset sale agreement clearly intended to effect a transfer of the

Guaranty through its definitions of "Loan(s)" and "Collateral Documents"; and (2) the Bill of Sale, if produced, would have expressly transferred Allegiant Bank's interest in the Guaranty to Holder, we are unable to confirm that the Bill of Sale actually exists. Absent the Bill of Sale, we cannot agree with Holder that Allegiant Bank expressly transferred the Guaranty. Nevertheless, as discussed below, we find that Holder took title to the Guaranty by operation of law.

## 3. The Guaranty

■ There are two types of guaranties—general and specific. *Gateway Frontier Properties, Inc. v. Selner, Glaser, Komen, Berger and Galganski, P.C.*, 974 S.W.2d 566, 569 (Mo.App. E.D.1998). A general guaranty is addressed to persons generally and is assignable under the principles of contract law. *Id.* at 570. A special guaranty is addressed to a particular person who alone can take advantage of it and to whom alone the guarantor can be held responsible. *Id.* Guarantor does not argue and the language of the Guaranty does not support a finding that the Guaranty is a special guaranty. The Guaranty specifically states that it is to be:

> for the benefit of [Allegiant Bank] and for such other person or persons as may from time to time become or be the holder or owner of any of the indebtedness or any interest therein, and this Guaranty shall be transferable to the same extent and with the same force and effect as any such indebtedness may be transferable.

Thus, the Guaranty is general and assignable under the principles of contract law.

This Court has recognized the general rule that "a transfer of the principal obligation is held to operate as an assignment of the guaranty" and that "[t]his is so even though there is no specific reference to the

guaranty in the assignment." *Gateway,* 974 S.W.2d at 571–72 (citing 38 Am.Jur.2d Guaranty Section [sic] 36).[2] *See also Savannah Place, Ltd. v. Heidelberg,* 122 S.W.3d 74, 83 (Mo.App. S.D.2003) (reciting same proposition). Although the question presented in this case—whether a guaranty was transferred by operation of law even though not attached to nor referred to in the document assigning the principal obligation—was not squarely raised in *Gateway* or *Savannah Place,* we see no reason why the general rule should not be applied here to support a finding that Holder became an assignee of the Guaranty when Allegiant Bank transferred the principal obligation.

Guarantor's arguments to the contrary are unpersuasive. Guarantor contends that even if our Court has recognized the rule that a guaranty may be transferred by operation of law, it has only recognized the rule in the context of transferring a guaranty along with an underlying lease obligation. Guarantor acknowledges that in *Gateway* this Court held that a guaranty promising performance by individuals of a law firm's obligations under a lease transferred along with the principal obligation even though the lease did not specifically refer to the guaranty. *See Gateway,* 974 S.W.2d at 571–72. According to Guarantor, however, *Gateway*'s reasoning does not apply here because that case "does not stand for the proposition that all guaranties, particularly those that accompany negotiable instruments, are automatically assigned upon transfer of the underlying promissory notes." Guarantor fails to explain why guaranties accompanying negotiable instruments should be treated any differently than those accompanying lease obligations. Moreover, 38 Am.Jur.2d Guaranty Section 33, upon which *Gateway* relied, specifically states that, similar to

any transfer of a principal obligation, "a guaranty of payment of a bill or note passes with a transfer of the bill or note." Guarantor's argument has no merit.

Guarantor also relies on a Texas case, *Ashcraft v. Lookadoo,* 952 S.W.2d 907 (Tex.App.1997). In *Ashcraft,* the holder purchased a note deficiency under a purchase and sale agreement. *Id.* at 909. Under the agreement's terms, the holder received only the assets listed in the asset schedule, which listed the asset as a commercial deficiency and did not mention any guaranties. *Id.* On appeal, the court considered whether the holder acquired a subsequently discovered guaranty when it purchased the note even though the asset file it received upon purchase did not include the guaranty and the seller never expressly assigned the guaranty. *Id.* at 908–09. The court held that the holder failed to prove he was the owner and holder of the guaranty. *Id.* at 909.

In reaching its conclusion, the court stated that it did not want to adopt and apply a broad legal principle pronouncing that in all cases the transfer of an underlying note automatically assigns any guaranties without need of a separate written assignment regardless of whether the parties knew about, or possessed, the guaranty. *Id.* at 912. The court paid particular attention to the language of the purchase and sale agreement, which specifically defined the asset the holder purchased as the note deficiency. *Id.* In addition to the contractual terms, the court explained that the only evidence of the guaranty was an unauthenticated copy showing the guaranty's terms from six years before the seller assigned the note. *Id.* Even though the guarantor did not challenge the authenticity of the guaranty, the court was sufficiently concerned with the evidence to find

2. Our research reveals that the proper citation is 38 Am.Jur.2d Guaranty Section 33.

that the holder never proved that the seller was the holder and owner of the guaranty when it assigned the note to the holder. *Id.* at 913–14.

Guarantor argues that, like in *Ashcraft*, the asset sale agreement in this case did not include the Guaranty as part of the assets to be purchased. We disagree. As stated above, we find that the asset sale agreement *did* include the Guaranty through its definition of "Loan(s)" and "Collateral Document." In addition, to the extent that *Ashcraft* could be interpreted to disfavor the rule that the transfer of a principal obligation will operate as an assignment of a general guaranty even if there is no specific reference to the guaranty in the assignment, we agree with Holder that later Texas cases have distinguished the holding in *Ashcraft* and found that there can be an implied transfer of a guaranty when the promissory note is assigned. *See Escalante v. Luckie*, 77 S.W.3d 410, 418 (Tex.App.2002); *Boyd v. Diversified Financial Systems*, 1 S.W.3d 888, 893 (Tex.App.1999). Thus, Guarantor fails to convince us to accept his position that Holder did not take title to or does not have the right to enforce the Guaranty. Defendants' first point is denied.

## C. Defendants' Personal Defenses Were Not Properly Pled

■ In their second point, Defendants argue that because Holder is not a holder in due course under section 400.3–302 RSMo 2000,[3] it is subject to their personal defenses of course of dealing, course of performance, and breach of the covenant of good faith and fair dealing.[4] Defendants contend that because genuine issues of material fact exist with respect to these defenses, the court's grant of summary judgment on Holder's claim to recover the remaining balance due on the Notes was improper. In response, Holder does not dispute Defendants' argument that it is not a holder in due course. Instead, Holder argues that Defendants failed to properly plead these personal defenses as affirmative defenses.[5]

We agree with Holder's assertion that Defendants' personal defenses, as pled in the form of affirmative defenses, fail as a matter of law. An affirmative defense is properly raised where the defendant asserts clearly and precisely additional facts which serve to avoid the defendant's legal responsibility even though the plaintiff's allegations are sustained by the evidence. *Ashland Oil, Inc. v. Warmann*, 869 S.W.2d 910, 911–12 (Mo.App. E.D.1994). The fac-

---

3. All statutory references are to RSMo 2000.

4. A holder of a negotiable instrument, such the Notes, is considered a "holder in due course" if
   the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 400.3–306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 400.3–305(a).

Section 400.3–302(a)(2). A holder in due course has the right to enforce a party's obligation to pay an instrument regardless of whether the party could assert a valid breach of contract defense. *See* section 400.3–305(b).

5. Holder asserts that, even if Defendants had properly pled these affirmative defenses, the plain and unambiguous language of the Notes, the Guaranty, the settlement agreements, and the forbearance agreement rule out Defendants' ability to raise their personal defenses. However, because we agree that Defendants did not properly plead their affirmative defenses, we need not consider the merits of Defendants' arguments.

tual basis for an affirmative defense must be presented in the same manner as is required for pleading claims under the Missouri Rules of Civil Procedure. *Id.* at 912. "A bare legal conclusion fails to inform the plaintiff of the facts relied on in support of the defense and thus fails to satisfy the requirements under Rule 55." *Id.*[6] An affirmative defense supported by conclusory allegations is insufficient as a matter of law. *ITT Commercial Finance Corp.*, 854 S.W.2d at 384.

In Defendants' answer to Holder's petition, their affirmative defenses are set forth as follows:

7. [Holder] took possession of [the Notes] with knowledge of a previously established a[sic] course of dealing and course of performance by and between Defendants and [Allegiant Bank] and therefore is estopped from collecting pursuant to such Notes.

8. [Holder] took possession of the Guaranty with knowledge of a previously established a[sic] course of dealing and course of performance by and between Defendants and [Allegiant Bank] and therefore is estopped from collecting pursuant to such Guaranty.

Reviewing these defenses, it is clear that Defendants allege no facts to support their conclusory allegations that Holder had knowledge of a previously established course of dealing and course of performance between Defendants and Allegiant Bank. In addition, Defendants do not even raise the defense of breach of the covenant of good faith and fair dealing in their answer. Accordingly, Holder was not required to negate these defenses in its motion for summary judgment. *ITT Commercial Finance Corp.*, 854 S.W.2d at 384. Defendants' second point is denied.

### D. Defendants have Failed to Demonstrate the Existence of Genuine Issues of Material Fact With Respect to Their Counterclaim for Wrongful Foreclosure

In their third point, Defendants argue that genuine issues of material fact exist as to their counterclaim for wrongful foreclosure. Defendants assert that there is evidence the foreclosure sale was conducted in a commercially unreasonable manner, that Holder sold the Deeds of Trust for considerably less than fair market value, and that Holder "rigged" the sale so that it could obtain title to the Property for one-half of its true market value.

To support their argument that the sale should be set aside, Defendants first focus on their expert appraiser's report, which values the Property at $3 million as of May 31, 2005, one month after Eureka Properties purchased the Property for $1.5 million. They contend that a sale of the Property for one-half of its value constitutes inadequate consideration. In addition, Defendants explain that even though Eureka Properties purchased the Property, it was really acting on behalf of Holder, the mortgagee at the time of the sale. In particular, they note that Eureka Properties quitclaimed its deed on the Property to Battlefield Properties a little more than four months after its purchase. Significantly, according to Defendants, Arthur Berg, the owner of Battlefield Properties, is also the president and sole employee of Holder.

A mortgagor (such as Maker) can invoke the aid of equity to set aside a foreclosure sale only if fraud, unfair dealing or mistake was involved in the trustee's sale. *Macon–Atlanta State Bank v. Gall,* 666 S.W.2d 934, 940 (Mo.App. W.D.

---

**6.** All references to Rules are to Missouri Supreme Court Rules (2008).

1984). A mortgagee, when foreclosing on the mortgaged property, "is a trustee for the mortgagor and is required to act in good faith and with absolute fairness in making the sale so as to protect the mortgagor." *Guels v. Mississippi Valley Trust Co.*, 329 Mo. 1154, 49 S.W.2d 60, 63 (1932). If the mortgagee purchases the property at its own sale at an inadequate price, the proceedings and circumstances must reveal a substantial irregularity or probable unfairness to justify setting aside the sale. *Id.* However, "inadequacy of consideration alone will not justify setting aside a foreclosure sale that was fairly and lawfully conducted, without fraud or partiality and with full opportunity for competitive bidding." *Mueller v. Simmons*, 634 S.W.2d 533, 536 (Mo.App. E.D.1982). *See also Yellow Mfg. Acceptance Corp. v. American Taxicabs, Inc.*, 344 Mo. 1200, 130 S.W.2d 601, 604 (1939) (stating that a sale for 40% of property's reasonable value "is not even a sufficient allegation of inadequate foreclosure price to state a case for setting aside the sale ... on the sole ground of inadequacy of price").

Defendants' reasons for setting aside the sale are that Arthur Berg, through his control of Holder, used Eureka Properties to obtain the Property at an inadequate price for his own entity, Battlefield Properties. Defendants do not argue that the sale was not fairly or lawfully conducted. They do not demonstrate any instances of fraud, partiality or less than a full opportunity for competitive bidding. Their only allegation of wrongdoing in addition to the purchase price is the connection between Holder and Battlefield Properties. However, Defendants still need to demonstrate a substantial irregularity or probable un-

fairness to set a sale aside when a mortgagee purchases property at his own sale. Defendants merely make a conclusory allegation that Holder "effectively did an 'end run'" around its requirement to act in good faith and with absolute fairness in making the sale. Such an allegation fails to raise any genuine issues of material fact as to Defendants' counterclaim for wrongful foreclosure. Defendants' third point is denied.[7]

## III. CONCLUSION

The trial court's judgment is affirmed.

KURT S. ODENWALD, P.J. and PATRICIA L. COHEN, J., concur.

---

**7.** In Defendants' fourth point, they argue that the trial court erred in granting Holder's motion for assessment of attorney's fees because the fees are derivative of an erroneous grant of summary judgment. Because we are affirming the trial court's grant of summary judgment, Defendants' fourth point is denied.