**Opinion filed September 26, 2024**



# In The

# Eleventh Court of Appeals

_____

## No. 11-23-00186-CV

_____

## LONG TRAN, Appellant

## V.

## CITY OF HASKELL, TEXAS, Appellee

**On Appeal from the 39th District Court**

**Haskell County, Texas**

**Trial Court Cause No. 12689**

## M E M O R A N D U M   O P I N I O N

Appellant, Long Tran, sued Appellee, the City of Haskell, under Article 1, Section 17 of the Texas constitution for the alleged "temporary taking" of his property—four dilapidated structures,[1] which the City ordered to be condemned,

---

[1]The "structures," all of which are situated in the City of Haskell, consist of two residential properties located at 1306 North Avenue G ("Md Part (60 x 140) of Lot 3, Block 2, Robertson and Day Addition, [City of] Haskell, Haskell County, Texas") and 1308 North Avenue G ("Northwest Corner (50 x 140) of Lot 3, Block 2, Robertson and Day Addition, [City of] Haskell, Haskell County, Texas"), and two

although its condemnation orders were quickly rescinded, and the structures remained. The City filed a plea to the jurisdiction and two amended pleas. After a hearing, the trial court granted the City's pleas. In a single issue, Tran contends that the trial court erred when it granted the City's pleas because Article 1, Section 17 requires that a city provide adequate compensation for "temporary takings." We affirm.

## I. *Factual Background*

The Haskell City Council addressed the dilapidated conditions of Tran's properties during several public hearings and council meetings in the first few months of 2022.

In January, the council held public hearings concerning Tran's properties and determined, unanimously, that the residential properties located on Avenue G should be condemned. As for Tran's commercial buildings located on First Street, the council granted Tran thirty days to submit a plan to repair the buildings, otherwise the buildings would also be condemned.

At a public hearing in February, the council again addressed the status of the Avenue G properties. On each Friday for two weeks before this hearing, the council published notice of the purpose of this hearing in the Haskell Star, the local newspaper. Debra Bartley appeared at this public hearing and stated that she was present "for the property owner" and that the owner "wanted to see if he could get extra time to fix the structures." The council decided to allow Tran until the next council meeting (two weeks later) to submit a "repair plan" for the Avenue G properties. Regarding the First Street commercial buildings, the council determined and ordered that they should be demolished within thirty days. The minutes for this

commercial buildings located at 414 North First Street ("The East 25 Foot of Lot 4, Block 19, Original Town of Haskell, Haskell County, Texas") and 416 North First Street ("The East 15 Feet of Lot 3, and West 5 feet of Lot 4, Block 19, Original Town of Haskell, Haskell County, Texas").

2

hearing also note that although notice of the January public hearings had been sent to Tran via United States Postal Service, the notice was not claimed and was returned to sender.

At the next council meeting in late February, the council again discussed the status of the Avenue G properties. The minutes note that Tran did not attend, although he sent written comments about these properties to the council for consideration at the February public hearing. The minutes further state that Tran later e-mailed the city administrator, and the city administrator replied and requested that he attend the February council meeting. The council announced at its February meeting that it had already granted an extension to Tran and this was the second meeting that addressed his properties in which he had not attended. At the conclusion of its meeting, the council ordered that the Avenue G properties should be condemned.

However, the council rescinded both condemnation orders at its April meeting. The agenda and minutes for the April meeting show that the City's code enforcement officer had resigned, which the City believed could affect its legal position should litigation commence based on its condemnation orders. As a result, and according to the minutes, the council concluded that rather than proceeding through the entire process again with a new code enforcement officer, it would prefer to work with Tran to preserve the properties; however, the council still needed a "repair plan" from him.

Tran alleges that he first became aware of the condemnation orders on May 8, from the contents of a letter that was taped to the front door of one of the properties. He filed the underlying lawsuit on May 16, 2022, and asserted claims for an illegal taking of property in violation of Article 1, Section 17 of the Texas constitution, inverse condemnation, due process violations, and violations of the Texas Administrative Procedure and Practice Act.

The City filed its original plea to the jurisdiction, and contended, among other things, that to the extent Tran (1) alleges the condemnation orders alone constitute a taking, (2) seeks a de novo review of those orders, or (3) alleges those orders were arbitrary and capricious and violated his rights under the due course of law or due process provisions of the Texas constitution, his claims are moot because the condemnation orders were rescinded. The City also contended that to the extent Tran's allegations could be construed as a regulatory-takings claim, he had failed to obtain a final decision from the City concerning the construction of the regulations that were applicable to his property, and therefore his claims were not ripe for adjudication.

The City later filed its first amended plea to the jurisdiction, in which it contended that the trial court lacked subject-matter jurisdiction over Tran's claims because his claims were moot or not ripe, and his operative pleading did not sufficiently allege a taking or a claim for property damages. The City also attached evidence to its amended plea that consisted of the agendas and minutes of the council meetings mentioned above. In response, Tran asserted that, because the City condemned his properties, the fair market value of the properties decreased, and the properties were vandalized. Tran also asserted that, while the properties were subject to the City's condemnation orders, this prevented him from enjoying access to and the free use of his properties.

Tran thereafter filed an amended petition in which he re-urged his loss-of-fair-market-value and destruction-of-property arguments which, according to Tran, the City knew or should have known would occur if it condemned the properties. Expanding on his contention that the City's condemnation orders had prevented him from accessing and freely using his properties, Tran also alleged that the orders prevented him from renting and selling these properties at the "peak" of the real estate market—thereby causing him to lose significant revenue—which he claimed

4

he intended to do when the orders were in effect. Tran further alleged that the condemnation orders lacked merit because the properties were in reasonably good condition at the time, and that the council's findings—that the properties were a public nuisance, were hazards to the public's health, safety, and welfare, and could not be reasonably repaired—were arbitrary and capricious. Tran sought between $100,000 and $200,000 in damages.

The City then filed its second amended plea to the jurisdiction in which it re-urged that the trial court lacked subject-matter jurisdiction over Tran's claims because his claims were moot or not ripe, and his amended pleading did not sufficiently allege a taking or a claim for property damages; the City also contended that its evidence conclusively disproved Tran's allegations.

After a hearing, the trial court granted the City's original, first amended, and second amended pleas to the jurisdiction and dismissed Tran's lawsuit with prejudice. Tran filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

## II. *Standard of Review*

Before a court may dispose of a case, it is essential that the court possess subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *Harris Cnty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). Ripeness is an element of subject-matter jurisdiction. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998) (citing *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994)). Consequently, we also review that discrete question de novo. *Id.* (citing *Tex. Ass'n of Business v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993)).

A plea to the jurisdiction is a dilatory plea and a proper method by which to challenge a trial court's subject-matter jurisdiction. *Weatherford Int'l, LLC v. City of Midland*, 652 S.W.3d 905, 912 (Tex. App.—Eastland 2022, pet. denied) (citing *Blue*, 34 S.W.3d at 554). The purpose of a plea to the jurisdiction is to defeat a pleaded cause of action without reaching the merits. *Id.* A plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018); *City of Merkel v. Copeland*, 561 S.W.3d 720, 723 (Tex. App.—Eastland 2018, pet. denied). When the plea challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim. *Clark*, 544 S.W.3d at 770–71 (citing *Blue*, 34 S.W.3d at 555). In such cases, the standard of review mirrors that of a traditional summary judgment. *Id.* at 771 (citing *Miranda*, 133 S.W.3d at 225–26).

If the plaintiff's factual allegations are challenged with supporting evidence necessary to the consideration of the plea, the plaintiff must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject-matter jurisdiction and avoid dismissal. *Id.* (citing *Miranda*, 133 S.W.3d at 221). When we determine whether a material fact issue exists, "we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Id.* We cannot, however, disregard evidence that is necessary to show context, nor can we disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 811–12, 822–23, 827 (Tex. 2005)).

### III. *Analysis*

Tran argues that the rescinded condemnation orders constitute *temporary* regulatory takings of his property for which he is entitled compensation under the

Texas constitution. He reasons that because (1) the Texas takings clause is broader than its federal counterpart, (2) the federal takings doctrine recognizes that a taking that is temporary in its duration can be compensable, and (3) he alleges that the City temporarily "took" his properties for a public purpose, which resulted in damage to the properties' value, we should conclude that he has properly alleged a takings claim under the Texas constitution and has, therefore, invoked the trial court's subject-matter jurisdiction to decide this case.

The City responds that (1) Tran has failed to plead sufficient facts that demonstrate a taking, (2) he has failed to plead sufficient facts that demonstrate the City "took" his properties when it knew damages would flow from its actions, and (3) his claims are not ripe for judicial review. We agree with the City.

The Texas constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation . . . ." TEX. CONST. art. 1, § 17(a). The Texas Supreme Court has acknowledged that this provision of our constitution is broader than its federal counterpart[2] "because it contains the additional verbs 'damaged,' 'destroyed,' and 'applied'— each of which creates a claim with its own distinct scope." *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 25 (Tex. 2024) (citing *City of Dallas v. Jennings*, 142 S.W.3d 310, 313 n.2 (Tex. 2004)); *see also Steele v. City of Houston*, 603 S.W.2d 786, 789–91 (Tex. 1980); *see also City of Baytown v. Schrock*, 645 S.W.3d 174, 182–84 (Tex. 2022) (Young, J., concurring); *Jim Olive Photography v. Univ. of Houston Sys.*, 624 S.W.3d 764, 780–82 (Tex. 2021) (Busby, J., concurring).

The Texas constitution waives governmental immunity with respect to liability under the takings clause. *See City of Houston v. Carlson*, 451 S.W.3d 828,

---

[2]U.S. CONST. amend V ("nor shall private property be taken for public use, without just compensation").

7

830 (Tex. 2014); *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 236 (Tex. 2011). Such claims are predicated on a viable allegation of taking; however, if a takings claim is not properly pleaded, the State retains its governmental immunity. *Carlson*, 451 S.W.3d at 830 (citing *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012)); *see Schrock*, 645 S.W.3d at 176 ("When government action falls short of a constitutional taking, immunity bars many such claims."). Similarly, if the State retains its immunity, its political subdivisions, such as the City, also retain and may assert governmental immunity. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Weatherford*, 652 S.W.3d at 911–12. We must sustain a properly raised plea to the jurisdiction if a plaintiff fails to sufficiently allege a taking. *See Hearts Bluff Game Ranch*, 381 S.W.3d at 491–92. Although the factfinder may need to "resolve disputed facts regarding the extent of the governmental intrusion on the property, the ultimate determination of whether the facts are sufficient to constitute a taking is a question of law." *Self*, 690 S.W.3d at 26 (quoting *Mayhew*, 964 S.W.2d at 933).

"When the government takes private property without first paying for it, the owner may recover damages for inverse condemnation." *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 554 (Tex. 2004). Inverse-condemnation lawsuits are actions commenced by the property owner who seeks compensation for the government's taking or damage to his property through means other than formal condemnation. *City of Dallas v. Stewart*, 361 S.W.3d 562, 567 (Tex. 2012); *see City of Houston v. Trail Enters., Inc.*, 300 S.W.3d 736, 736–37 (Tex. 2009). To assert an inverse-condemnation claim, a party must plead: (1) the government intentionally performed an act in the exercise of its lawful authority; (2) that resulted in the taking, damage to, or destruction of the party's property; (3) for public use. *See Self*, 690 S.W.3d at 26 (citing *Sw. Bell Tel., L.P. v. Harris Cnty. Toll Rd. Auth.*, 282 S.W.3d

8

59, 62 (Tex. 2009)); *City of Austin v. Liberty Mut. Ins.*, 431 S.W.3d 817, 824 (Tex. App.—Austin 2014, no pet.).

Although the Texas constitution does not expressly require that the taking involve an intentional act, such a requirement helps ensure that the taking is for "public use." *Self*, 690 S.W.3d at 26 (citing *City of San Antonio v. Pollock*, 284 S.W.3d 809, 820–21 (Tex. 2009)). As it applies to regulatory takings, this requirement is typically satisfied by the passage of a law or regulation or its actual or threatened application to the plaintiff's property. *Id.* at 26 n.11 (citing *Lowenberg v. City of Dallas*, 168 S.W.3d 800, 802 (Tex. 2005)). "An intentional act satisfying the first element requires evidence that the entity either (a) 'intended to damage the property' or (b) 'kn[ew] that [its conduct was] causing identifiable harm' or that 'specific property damage [was] substantially certain to result from [the conduct].'" *Id.* at 26 (quoting *Jennings*, 142 S.W.3d at 313–14); *see Schrock*, 645 S.W.3d at 178 ("[A] plaintiff must show that the government intended to or was substantially certain that its actions would take or damage the [claimant's] property for public use.").

In support of his arguments, Tran relies heavily on Justice Young's concurring opinion in *Schrock*. *See Schrock*, 645 S.W.3d at 182–88 (Young, J., concurring); *see also Jim Olive Photography*, 624 S.W.3d at 780 (Busby, J., concurring). The concurrence in *Schrock* emphasized that although the text of the takings clause in the Texas constitution clearly is broader than its counterpart in the United States Constitution, because parties have typically neglected to raise takings claims under the Texas constitution specifically, the court has not yet been asked to determine how much broader the Texas takings clause actually is, if at all. *See Schrock*, 645 S.W.3d at 184 ("We cannot meaningfully answer those questions unless litigants undertake substantial additional work beyond invoking federal takings doctrines."); *see also Jim Olive Photography*, 624 S.W.3d at 782 (Busby, J., concurring) (noting

that the appellant failed to contend that the takings analysis should be different under the Texas constitution).  Here, Tran's inverse-condemnation claim is specifically and only raised pursuant to the *Texas* constitution's takings clause.  *See* TEX. CONST. art. 1, § 17.

Tran links the reasoning of the *Schrock* concurrence with the United States Supreme Court's opinion in *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 32–34 (2012), in which the Court held that a temporary flooding caused by the Corps of Engineers could be compensable under the federal takings clause.  Tran argues that because (1) the federal takings clause contemplates compensation for "temporary takings," and (2) the Texas takings clause is broader than its federal counterpart, his inverse-condemnation claim that is based on the City's "temporary" action is thus compensable under the Texas takings clause.

The Fifth Court of Appeals addressed and rejected a similar "temporary takings" argument.  *See Galovelho LLC v. Abbott*, No. 05-21-00965-CV, 2023 WL 5542621, at *5–6 (Tex. App.—Dallas Aug. 29, 2023, pet. denied) (mem. op.).  Galovelho, a restaurant operator, sued Governor Abbott, Collin County, and the City of Frisco for regulatory takings pursuant to the adoption of emergency orders related to the COVID-19 pandemic, which restricted certain restaurant operations, including the prohibition of dine-in services (although the emergency orders permitted take-out, delivery, or drive-through services).  *See id.* at *1–2.  In addition to its claim for a categorical taking under *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992), and alternatively for a traditional taking under *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978), Galovelho argued that, under the Texas takings clause, it need only plead and prove some "damage" to its property to be entitled to compensation from the government.  *See id.* at *5.

Galovelho relied on the concurring opinions in *Schrock* and *Jim Olive Photography* to support its argument that, as the Fifth Court of Appeals stated, "the

damages he alleges [that resulted] from temporary restrictions [equates] to an actual taking." *Id.* at *6. In other words, Galovelho argued that in such a scenario *any* damage to property, irrespective of the duration, would be compensable under the Texas constitution. *Id.* at *5–6. The Fifth Court of Appeals rejected this contention and, in doing so, quoted from the *Jim Olive Photography* majority opinion: "A compensable taking does not arise whenever state action adversely affects private property interests. Governments interfere with private property rights every day. Some of those intrusions are compensable; most are not." *Id.* at *6 (quoting *Jim Olive Photography*, 624 S.W.3d at 771). The court further noted that the concurring opinions in *Schrock* and *Jim Olive Photography* did not appear to support Galovelho's argument and reiterated that "Texas case law on takings under the Texas Constitution is consistent with federal jurisprudence." *Id.* Although it acknowledged that the language of the Texas and federal takings provisions differ, the court stated that it "await[ed] [the Texas Supreme] [C]ourt's directive that the provisions are to be analyzed differently when a takings claim is made for property [that is] *temporarily* 'damaged.'" *Id.* (emphasis added). Likewise, we deem it prudent to show restraint and await, when raised, the Texas Supreme Court's guidance on this issue.

Here, Tran alleges that his properties were "damaged" merely because the City issued condemnation orders, orders which were rescinded soon thereafter and with no action having been taken by the City to demolish his properties. He asserts that because these orders were issued, his property "was damaged for public purpose and these damages include loss in market value, loss in rental value, and other such damages." He also alleges that after the condemnation notices were affixed to his properties, the properties were vandalized and damaged, which forced him to expend personal funds to repair the damage.

Although Tran has specifically raised his condemnation claim under the *Texas* takings clause, as the *Schrock* concurrence mentions, his pleaded claims suffer the same deficiencies as Galovelho's. In his concurrence, Justice Young specifically notes that to address and answer the questions of how much broader, if any, the Texas takings clause is than its federal counterpart, and under what circumstances, the court would need to review a case which presents "arguments tailored to our *state* constitutional law." *Schrock*, 645 S.W.3d at 184 (Young, J., concurring). To do so, a litigant would need to "undertake substantial additional work beyond invoking federal takings doctrines," including "comprehensive briefing from the parties . . . on the precise scope of the right to compensation that the *Texas* Constitution affords." *Id.* Moreover, the "[a]ntecedent questions concerning the nature of the property interests at issue, and whether they can support a claim under our Constitution, also would likely require careful attention." *Id.* The concurrence concludes that "[i]n an appropriate case, a party may well show that the Texas Constitution requires compensation in circumstances in which the United States Constitution does not." *Id.* at 184–85.

But the circumstances to which Tran attempts to advance, and to which the *Schrock* concurrence alludes and contemplates, are not present here. Tran, like Galovelho, has not undertaken any "comprehensive briefing." *See Galovelho*, 2023 WL 5542621, at *5–6 ("[R]elying largely on two recent concurring opinions by supreme court justices, [Galovelho] simply *equates the damages he alleges [resulted] from temporary restrictions to [be] an actual taking. We do not read either of the concurring opinions to make that same equation.*") (emphasis added); *Schrock*, 645 S.W.3d at 185 ("Nearly any complaint about governmental action can be contorted into *some* allegation of a taking. Rigorous and serious requirements for establishing causation and damages will ensure that worthy claims, but *only* worthy

claims, will both proceed and merit full compensation.") (Young, J., concurring). We agree with the *Galovelho* court's analysis and rationale.

Further, in his appellate brief and his live pleading in the trial court below Tran makes only vague and conclusory arguments and allegations regarding any damage his properties sustained because of the City's alleged "temporary taking." In fact, the entirety of Tran's briefing focuses on the *Schrock* concurrence's suggestion that a novel issue to Texas takings jurisprudence may be viably charted in this case. Absent an adequately explicated theory charting such a course, we would perhaps turn to the usual federal approach to analyze Tran's takings claim. *See, e.g.*, *Jim Olive Photography*, 624 S.W.3d at 771 ("Texas case law on takings under the Texas Constitution is consistent with federal jurisprudence.") (quoting *Hearts Bluff Game Ranch*, 381 S.W.3d at 477) (internal quotation marks omitted). But Tran does not assert or brief any such argument, nor does he advance the typical takings clause jurisprudence in which the Texas and federal provisions are treated consistently with each other.[3] *See Carlson*, 451 S.W.3d at 831 (citing *Hearts Bluff Game Ranch*, 381 S.W.3d at 477). Simply put, Tran failed to chart the course. Accordingly, we will not address an issue or argument that is not adequately briefed by the parties. *See* TEX. R. APP. P. 38.1(f), (i).

Nevertheless, even had Tran sufficiently pleaded a takings claim, his alleged claims are not ripe for judicial review. For a regulatory-takings claim to be ripe, the governmental entity must have rendered a final decision regarding the application of

---

[3]Tran's live pleading states that the City "knew or should have known" that condemning his properties would (1) decrease the value of his properties, (2) prevent him from access, enjoyment, and the receipt of rental revenue from the properties, (3) prevent him from selling his properties at the "peak" of the current real estate market, and (4) result in physical invasions and vandalism. However, Tran does not raise or address these points on appeal. *See* TEX. R. APP. P. 33.1. Despite this, even if these points had been preserved, Tran's general assertions that the City "knew or should have known" that its actions would result in some damage to his properties (1) are insufficient to establish the requisite intentional conduct to support a takings claim and (2) fail to describe in any particularity how the City knew or should have known that any of the alleged damages would be incurred. *See Self*, 690 S.W.3d at 26 (setting out the requirements to establish an intentional act); *Schrock*, 645 S.W.3d at 178 (same).

13

the regulations to the property at issue. *Mayhew*, 964 S.W.2d at 929 (citing *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 (1997)). In this case, the condemnation orders were rescinded by the City soon (within sixty days) after they were issued. The minutes from the council's meetings show that, because of the resignation of the City's code enforcement officer, it would be necessary to begin this process anew. No condemnation orders have been reissued and no subsequent action of any kind was taken by the City on this matter. Notably, Tran was not even aware of the condemnation orders until May 8, nearly a month after they had been rescinded at the April 12 council meeting. Because Tran did not obtain a final decision from the City on his asserted claims, and based on the circumstances presented, we conclude that Tran's claims are not ripe for judicial review. *See id.* at 929.

We have reviewed the record in accordance with the applicable standard of review and we conclude that the trial court did not err when it granted the City's pleas to the jurisdiction. Accordingly, we overrule Tran's sole issue.

IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


September 26, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.